Interim Decision #1290

## MATTER OF PERALTA

## In DEPORTATION Proceedings

### A-11402870

*Decided by Board June 19, 1963*

(1) An applicant for suspension of deportation within the provisions of section 244(b), Immigration and Nationality Act, as amended, is exempt from the requirement of any specified period of physical presence.

(2) While such an applicant is also exempt from the necessity of establishing good moral character for the period coextensive with the physical-presence period, he must establish good moral character between the date he filed his application and the date it is finally adjudicated. Conduct prior to date of filing can be considered in determining whether good moral character has been established during the period in question.

(3) In computing the 24-month period of active-duty status under section 244(b) of the Act, as amended, annual active training duty as a member of the Reserves can be credited to active-duty service but unused accrued leave cannot be so credited.

CHARGE:

Order: Act of 1952—Section 241(a)(9) [8 U.S.C. 1251(a)(9)]—Failed to comply with conditions of admission—student.

The special inquiry officer granted suspension of deportation and certified his order to the Board for final decision. The order will be approved.

The issue concerns the effect of military service in the United States on the necessity of an applicant for suspension of deportation establishing that he has seven years continuous physical presence in the United States.

Respondent, a 25-year-old, single, male alien, a native and citizen of the Philippines, was admitted to the United States as a student on October 5, 1957. He has not attended school since June 14, 1962; he is clearly deportable on the charge in the order to show cause.

On March 11, 1959, the respondent was inducted into the Army of the United States at Oakland, California; he was on active duty until February 28, 1961, when he received an honorable release to the Reserves. He is obligated to serve in the Reserves until March 10, 1965.

300

He attended the annual active duty for training required of Reserves from June 17 to June 30, 1962.

Respondent is applying for suspension of deportation under section 244(a)(1) of the Immigration and Nationality Act as amended by Public Law 87–885, October 24, 1962, 87 Stat. 1247 (8 U.S.C.A. 1254 (Supp. 1962)) which provides for suspension of deportation of an alien who:

(1) is deportable under any law of the United States except the provisions specified in paragraph (2) of this subsection; has been physically present in the United States for a continuous period of not less than seven years immediately preceding the date of such application, and proves that during all of such period he was and is a person of good moral character;

Respondent, who has not been in the United States for seven years, believes that the requirement as to length of residence is waived by section 244(b) of the Act which provides:

The requirement of continuous physical presence in the United States specified in paragraphs (1) and (2) of subsection (a) of this section shall not be applicable to an alien who (A) has served for a minimum period of twenty-four months in an active-duty status in the Armed Forces of the United States and, if separated from such service, was separated under honorable conditions, and (B) at the time of his enlistment or induction was in the United States.

The exemption from physical presence in the United States can be read in two ways: It can mean that a total presence of seven years in the United States is required but that the presence need not be a continuous one; it can also mean that seven years presence in the United States is not required. We believe that the second premise was intended by Congress and that the necessity for any definite period of presence has been eliminated.

Representative Walter who handled the legislation made the following statement on the floor of the House concerning the section:

The inclusion in the benefits of this legislation of aliens who served honorably for a stated period of time in the Armed Forces of the United States represents the incorporation into a permanent statute of a policy traditionally adhered to by the Congress in the enactment of private relief bills for the alien servicemen or ex-servicemen. (108 Cong. Rec. 22153 (daily ed. October 12, 1962.))

Since it was the purpose of Congress to minimize the number of private relief bills for alien servicemen—a purpose which can best be accomplished by taking a broad view of the legislation, and since remedial legislation should be broadly interpreted, we hold that it was the intent of Congress to eliminate any specified period of residence in the United States for a person who has the necessary honorable service in the Armed Forces.

This conclusion brings us to the question whether the respondent had honorable service "for a minimum period of twenty-four months in an active-duty status." The military report of the respondent's

transfer from active duty (Form DD-214) reveals, induction on March 11, 1959, release to the Reserves on February 28, 1961, credit with a total active service of 1 year, 11 months, and 20 days, and a lump-sum payment for 47 days accrued leave. Respondent has also supplied evidence that he complied with a Reserve obligation by attending annual active duty for training (ANACDUTRA) from June 17 to June 30 (Ex. 2). We find that the accrued 47 days of leave during his active military service may not be used to compute the period of active-duty, but that the service from June 17-30, 1962, can be used for such purpose.

The definitions of pertinent terms follow:

"Active duty" means full-time duty in the active military service of the United States. It includes duty on the active list, full-time training duty, annual training duty, and attendance, while in the active military service, at a school designated as a service school by law or by the Secretary of the military department concerned (10 U.S.C. 101(22)).

"Active service" means service on active duty (10 U.S.C. 101(24)).

"Inactive-duty training" means—(A) duty prescribed for Reserves by the Secretary concerned under section 206 of title 37 or any other provision of law; and (B) special additional duties authorized for Reserves by an authority designated by the Secretary concerned and performed by them on a voluntary basis in connection with the prescribed training or maintenance activities of the units to which they are assigned.

It includes those duties when performed by Reserves in their status as members of the National Guard (10 U.S.C. 101(31)).

Leave taken prior to discharge or separation from the service will be considered as active military service but unused accrued leave settled and compensated for under the Armed Forces Leave Act of 1946, as amended, will not be considered as active military service (AR 630-5, Sec. III par. 22(a)2).

We can thus see that the accrued leave cannot be credited as active-duty service but that it is proper to utilize the annual training duty. Respondent therefore has the required period of military service of the requisite character.

Our conclusion that Congress eliminated any specified period of physical presence for the qualified serviceman requires consideration of the question whether the exemption also eliminated the necessity for establishing good moral character for a specified period. In a somewhat similar situation regarding naturalization benefits awarded to servicemen, the court held that elimination of the specified period of residence which had been referred to in the general requirement that good moral character be established for a fixed period, eliminated for the serviceman, the obligation of establishing good moral character except for the period from the time of filing the application for benefits to the time of final adjudication. (Conduct prior to the date of the filing could be considered as bearing upon the question of whether good moral character within the requisite period had been

302

established.) (*In Re Petition for Naturalization of Suey Chin*, 173 F. Supp. 510, 512–3, S.D.N.Y. (1959) ; see also *Yuen Jung* v. *Barber*, 184 F. 2d 491, 9th Cir. (1950).) It appears to us a similar rule must apply here. In the instant case, affidavits of friends, service investigations, check of records of police and the Federal Bureau of Investigation has failed to reveal any derogatory information. Respondent is considered a person of good moral character and loyal to the United States. We believe that respondent has established good moral character. No change will be made in the order of the special inquiry officer granting suspension.

**ORDER:** It is ordered that no change be made in the order of the special inquiry officer.