UNITED STATES of America ex rel. Carlos MARCELLO, Petitioner–Appellee,

v.

DISTRICT DIRECTOR OF the IMMIGRATION & NATURALIZATION SERVICE, NEW ORLEANS, LOUISIANA, Respondent–Appellant.

No. 79–3219.

United States Court of Appeals, Fifth Circuit.

Jan. 22, 1981.

Rehearing and Rehearing En Banc Denied March 13, 1981.

---

James P. Morris, Dept. of Justice, Gen. Litigation & Legal Advice Sec., Criminal Div., Washington, D. C., for respondent–appellant.

Virgil M. Wheeler, Jr., New Orleans, La., Jack Wasserman, Washington, D. C., Thomas M. Cooley II, Pittsburgh, Pa., for petitioner–appellee.

Before THORNBERRY, GEE and REAVLEY, Circuit Judges.

GEE, Circuit Judge:

Carlos Marcello, a foreign national permanently resident in the United States, was first ordered deported in 1953, almost thirty years ago, on the basis of a 1938 marijuana conviction. The order was not executed until 1961, however, when it was apparently executed illegally: arguably Marcello was shanghaied to Guatemala without prior notice to him or his attorney by means of a Guatemalan birth certificate that the Immigration and Naturalization Service (INS) may have known was a forgery. About a month later, Marcello reentered the United States without permission and, later in 1961, was the subject of another deportation order, this one based both on the 1938 conviction and the illegal entry after the apparently irregular 1961 deportation. The validity of neither the 1953 order nor of the 1961 order, insofar as it rests on the 1938 conviction, is contested here.

In 1972, Marcello filed an application for suspension of deportation, and in 1976 the Board of Immigration Appeals (Board) denied the application on two independent grounds: that Marcello had not shown the good moral character required for suspension by 8 U.S.C. § 1254(a) and that the Board did not choose to exercise its discretion to suspend deportation. The Board relied primarily on a 1968 conviction for assault and expressly stated that it did not consider Marcello's reentry after the 1961 deportation.

Marcello then filed this habeas action in federal district court. The court, after concluding that it had habeas jurisdiction, found that the Board both erred in finding that Marcello lacked good moral character and abused its discretion in denying suspension of deportation. The court vacated the Board's decision and remanded the cause for a determination of the validity of the 1961 deportation and a reassessment of Marcello's character. 472 F.Supp. 1199. We reverse.

Although the facts of Marcello's case are relatively straightforward, we find the legal issues posed by astute counsel on both sides both doubtful and difficult. We treat them in what seems to us their logical order.

### Is Habeas Available as a Remedy?

Commendably, as a matter of advocacy, the government's first contention goes for the jugular. It urges us to hold that the district court lacked jurisdiction to pass on this matter at all. The contention is not without force, and the reasons why we must reject it require some explication.

In 1961, concerned by the lengthy delays in deportations occasioned by developing ju-

dicial precedent,[1] the Congress attempted to streamline these arrangements. It did so by enacting 8 U.S.C. § 1105a, which provides that the courts of appeals are to be the "sole" organs of review for final deportation orders and thus restricts resort to the district courts in such cases. The legislative purpose and background of this statute are extensively reviewed in *Foti v. Immigration Service*, 375 U.S. 217, 84 S.Ct. 306, 11 L.Ed.2d 281 (1963), and need not be further discussed here except in the one respect that is material.

The sweep of section 1105a could not be a clean one because of Article I, section 9 of the Constitution, providing, among other things, that the Great Writ should not be suspended unless rebellion or invasion was in progress. This Congress recognized in section 1105a(a)(9) of the statute, which provides that an "alien held in custody pursuant to an order of deportation" can seek judicial relief via habeas corpus. The government urges upon us that since Marcello is not presently "held in custody," but merely subjected to reporting requirements and travel restrictions, habeas relief is not available to him.

It is true that in 1961, when the amending act was passed, "custody" for habeas purposes meant primarily physical detention by the government. Since most aliens subject to deportation orders are not physically detained, the habeas exception to exclusive review in the courts of appeals was

then a minor one. Since 1961, however, the Supreme Court has expanded the concept of custody for habeas proceedings after conviction to encompass any significant restraint on liberty, including parole, *Jones v. Cunningham*, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963), and release on one's own recognizance, *Hensley v. Municipal Court*, 411 U.S. 345, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973). If this broader notion of custody applies generally to habeas under section 1105a(a)(9), then the court below had jurisdiction,[2] habeas commencing in the district court remains an alternative vehicle of review in most deportation proceedings, and the judicial reform that Congress attempted to bring about by enacting section 1105a– elimination of the district court step in review of deportation orders–is in great part stultified.

### Congressional Intent in Enacting Section 1105a

■ As we have discussed briefly above, *see* note 1 and accompanying text, by 1961 Congress had become concerned at the proliferation and overlapping modes for review of deportation orders divined by the federal courts. The availability of so many options, it felt, enabled astute counsel effectively to nullify such orders by interposing interminable procedural delays. Cited at length in the legislative history were examples drawn from the history of the long campaign of the government to deport Marcello himself.[3]

1. Historically, an order for the deportation of an alien could be challenged in the courts solely by habeas corpus proceedings, available to the alien only after he had been taken into custody. In recent years, as a result of judicial decision, it has become possible for aliens to obtain judicial review of an order of deportation upon its issuance. An equally divided Supreme Court, in January 1954, affirmed per curiam a holding that deportation orders issued under the Immigration and Nationality Act of 1952 are reviewable in actions for declaratory judgment as well as by habeas corpus (*Brownell v. Rubinstein*, 346 U.S. 929 [74 S.Ct. 319, 98 L.Ed. 421] (1954)). Later, the Supreme Court held that deportation orders entered under the Immigration and Nationality Act of 1952 can be judicially reviewed in actions of declaratory and injunctive relief under section 10 of the Admin-

istrative Procedure Act (*Shaughnessy v. Pedreiro*, 349 U.S. 48 [75 S.Ct. 591, 99 L.Ed. 868] (1955)).

There are several objections to the divergent methods of review. They lack uniformity. They are not mutually exclusive. They result in a delay in deporting an alien who should be deported. There is need for expedition, orderly venue, and the avoiding of repetitious court proceedings.

H.R.Rep.No.565, 87th Cong., 1st Sess. 5, 6 (1961) (testimony of the Assistant Attorney General heading the Criminal Division of the Justice Department before subcommittee of Judiciary Committee).

2. *See* n.11, *infra*, and accompanying text.

3. *See* Appendix A.

Today, twenty years later, that campaign continues.

The result of this congressional concern was the passage of 8 U.S.C. § 1105a. By that enactment, the Congress provided a single statutory method for review of final deportation orders, abolishing all others, with one exception. We need not concern ourselves at length with the normal mode of review provided, since the time for Marcello to have pursued it is long past, and its provisions are not before us. Generally speaking, however, it sought to eliminate the inordinate delays that Congress perceived by providing for substantial–evidence review of the INS deportation proceeding in the courts of appeals, eliminating any initial resort to the district courts and requiring that such review be sought within six months of the final deportation order. *See Foti*, 375 U.S. at 224–36, 84 S.Ct. at 311–315. It is the exception to this method of review, however, that is before us in this case, Marcello having chosen to proceed under its provisions. It states: "any alien held in custody pursuant to an order of deportation may obtain judicial review thereof by habeas corpus proceedings." 8 U.S.C. § 1105a(a)(9).

The legislative history of section 1105a leaves little doubt that by enacting it Congress meant to establish two mutually exclusive modes for reviewing deportation orders:[4] a general scheme of statutory review for cases where the alien was not "held in custody" and a provision for habeas review where he was. The Report of the House Committee provides on its first page that:

> The bill provides that with certain specified exceptions (made necessary by the unique subject matter of the bill), all the provisions of the act of December 29, 1950 (64 Stat. 1129, 68 Stat. 961; 5 U.S.C. 1031 et seq.), shall apply to and be the sole and exclusive procedure for judicial review of orders of deportation. In sub-

stance, an alien aggrieved by such an order may seek judicial review by filing a petition in the U.S. circuit court of appeals. The writ of habeas corpus is specifically reserved to an alien held in custody pursuant to an order of deportation.[5]

Also included in the report is the text of a letter from then Deputy Attorney General, now Justice, Bryon R. White to the chairman of the committee explaining, in response to his request, the Justice Department's view of the legislation and providing in pertinent part:

> Aliens seeking review of administrative orders should be given full and fair opportunity to do so, but the present possibilities of review pose undesirable obstacles to deportation of aliens who have been ordered deported and have had their day in court. An alien subject to a deportation order, having lost his case in a declaratory judgment or injunction proceeding may thereafter sue out a writ of habeas corpus when taken into custody. Moreover, as the law now stands, it is possible to seek relief by habeas corpus repeatedly.
>
> The bill proposes to meet this problem by providing an exclusive method of review of deportation orders for aliens not in custody. This would be by petition for review in the appropriate court of appeals. The procedure is generally as prescribed by the act of December 29, 1950 (64 Stat. 1129; 68 Stat. 961; 5 U.S.C. 1031), relating to judicial review of orders of Federal agencies. The bill also provides "any alien held in custody pursuant to an order of deportation may obtain judicial review thereof by habeas corpus proceedings." In order to meet the problem of repeated proceedings, no petition for review by the court of appeals or for habeas corpus may be entertained if the validity of the deportation order has been previously determined in any civil or

---

**4.** In the *Foti* case the Supreme Court held that the statutory phrase "final orders of deportation" includes denials of suspension of deportation such as we review here. 375 U.S. at 236, 84 S.Ct. at 315.

**5.** H.R.Rep.No.565, 87th Cong., 1st Sess. 1 (1961).

criminal proceeding unless (1) the petition presents grounds which the court finds could not have been presented in the prior proceeding, or (2) the court finds that the remedy provided by the prior proceeding was inadequate or ineffective to test the validity of the order. Administrative findings of fact in deportation cases are made conclusive if supported by reasonable, substantial, and probative evidence.

Also in order to speed up the judicial review, the special statutory review proceeding provided in the bill must be instituted not later than 6 months from the date of the final order of deportation. At the present time there is no time limitation applicable to judicial review.[6]

Finally, in the portion of the report entitled "Analysis of the Bill" it is asserted that "[t]he bill carefully preserves the writ of habeas corpus to an alien detained in custody pursuant to a deportation order."[7]

It is apparent, therefore, that Congress meant by enacting section 1105a to provide for two modes of review, one for those "held in custody" and one for those not so held. It remains for us to inquire what was intended by the phrase "held in custody." We think the statutory pattern and structure make plain that what was meant is actual, physical custody in a place of detention. Until that had occurred, we do not think the remedy of review by habeas corpus proceedings was meant to apply but rather that of review by direct appeal.[8]

Examining the pattern of the statute,[9] as well as legislative material such as the Justice Department letter quoted in part above, *see* text accompanying note 6, leaves little room for doubt that Congress attempted to severely limit the availability of habeas review. The basic pattern of review is meant to be by petition to the appellate court, not by resort to habeas in the district court.

Section (a)(7) of 8 U.S.C. § 1105a, separated from section (a)(9), which preserves the habeas remedy to those "held in custody" only by a housekeeping provision, provides:

(7) nothing in this section shall be construed to require the Attorney General to defer deportation of an alien after the issuance of a deportation order because of the right of judicial review of the order granted by this section, or to relieve any alien from compliance with subsections (d) and (e) of section 1252 of this title. Nothing contained in this section shall be construed to preclude the Attorney General from detaining or continuing to detain an alien or from taking him into custody pursuant to subsection (c) of section 1252 of this title at any time after the issuance of a deportation order[.]

Subsections (c), (d), and (e) of section 1252, referred to above, provide respectively for a six–month period following the order of deportation or of the reviewing court for deportation of the alien, with authorization to the Attorney General to provide places of detention for those taken into custody; for mandatory supervision of aliens against whom final orders of deportation have been outstanding for so much as six months; and for criminal penalties for those seeking to evade deportation.

Finally, subsection (c) of section 1105a provides:

(c) An order of deportation or of exclusion shall not be reviewed by any court if the alien has not exhausted the administrative remedies available to him as of

---

**6.** *Id.* at 3.

**7.** *Id.* at 14.

**8.** We do not suggest that Congress intended that release on bail or personal recognizance after the commencement of actual, physical custody would interfere with habeas proceedings; nor do we suggest that such a result would obtain today. *See Hensley v. Municipal Court*, 411 U.S. 345, 93 S.Ct. 1571, 36 L.Ed.2d

294 (1973); *Jones v. Cunningham*, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963).

**9.** What we say here concerning the statute's direct appeal remedy is not intended as a binding construction of those provisions of the statute, since nothing that turns on those provisions is squarely before us. Rather, we seek the congressional intent and plan.

right under the immigration laws and regulations or if he has departed from the United States after the issuance of the order. Every petition for review or for habeas corpus shall state whether the validity of the order has been upheld in any prior judicial proceeding, and, if so, the nature and date thereof, and the court in which such proceeding took place. No petition for review or for habeas corpus shall be entertained if the validity of the order has been previously determined in any civil or criminal proceeding, unless the petition presents grounds which the court finds could not have been presented in such prior proceeding, or the court finds that the remedy provided by such prior proceeding was inadequate or ineffective to test the validity of the order.

■ Thus, we view a congressional pattern for deportation proceedings that contemplates:

First, a final administrative deportation order;

Second, a six–month period thereafter during which review in the court of appeals may be sought and during which the Attorney General may seek to deport the alien, with or without taking him into physical custody;

Third, mandatory and restrictive supervision of those aliens remaining here after the six–month period; and

Fourth, judicial review by means of habeas corpus proceedings for aliens held in custody.

Viewing this plan, it is at once plain that the Congress, when enacting section 1105a, did not see the mere existence of an outstanding deportation order against an alien as placing him in the status of "held in custody." Had it done so, a main procedural innovation of the enactment—eliminating

resort to the district courts in the majority of cases—would have been an entire futility from its outset, since habeas in the district court would have been immediately available to all persons ordered deported, without any further assertion of "custody" over them, and resort to the district court routinely had, doubtless, by the delay-minded.

*The Government Contention Here*

Reasoning from the above premises, the government contends that habeas is not available to Marcello here, since at the time his petition was filed he was not in physical custody. As we noted at the outset, the argument has force, a force derived from its congruence with apparent congressional intent in crafting and enacting the statutory plan.

■ At the time this petition was filed, when Marcello was subject only to the deportation order, we do not doubt that resort to the court of appeals was available to him as a remedy. Nor do we doubt that, having once so appealed, his right to obtain review in that mode would not have been disturbed by his being taken into "custody." If it were in the Attorney General's power to destroy the appellate remedy by moving under section 1105a(a)(7), quoted above, to seize an appellant, it would be of little value indeed. Nor, once such an appeal has been lodged, would the alien be well advised to dismiss it upon coming into custody and institute habeas proceedings in its stead. Such a course—indeed a mere failure to appeal at all within the six–month period provided—would raise immediate questions of deliberate bypass of statutory remedies, and should the occurrence of such a bypass be determined, habeas relief would likely be held unavailable as well—except perhaps for matters excepted by section 1105a(c).[10]

---

10. Those "which the court finds could not have been presented in such prior proceeding, or the court finds that the remedy provided by such prior proceeding was inadequate or ineffective to test the validity of the order." 8 U.S.C. § 1105a(c).

In the analogous context of 28 U.S.C. § 2255, we have often observed that a deliberate bypass of the provided remedy of a federal appeal

generally forecloses raising by the extraordinary means of habeas issues that could have been asserted in the foregone appeal. *Buckelew v. United States*, 575 F.2d 515, 518–19 (5th Cir. 1978); *Sosa v. United States*, 550 F.2d 244, 246–49 (5th Cir. 1977); *McKnight v. United States*, 507 F.2d 1034 (5th Cir. 1975); *Morris v. United States*, 503 F.2d 457 (5th Cir. 1974); *Larson v. United States*, 275 F.2d 673, 679 (5th

■ Here, however, the converse has occurred; Marcello filed his habeas petition at a time when, arguably, he was merely subject to a deportation order and not "held in custody." Perhaps a timely motion to dismiss, timely acted upon, might have forestalled this present cause before "custody" attached. This did not take place, however; and if the Supreme Court's expanded concepts of custody apply here, then Marcello presently is and for a long time has been in that condition.[11] We can discern little, if any, practical difference between the condition of Marcello and that of Hensley, who was held by the Court to have been in custody for habeas purposes. *Hensley v. Municipal Court*, 411 U.S. 345, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973). We conclude that since Marcello is presently in custody, though perhaps he was not for section 1105a purposes when this habeas petition was filed, we have jurisdiction of his appeal.

■ Next, the government urges us to discern and apply to Marcello's attempt to obtain relief in this case, pursuant to 28 U.S.C. § 2241, the exhaustion requirements that are applied in actions brought pursuant to sections 2254 (state criminal convictions) and 2255 (federal ones). Only when the alien has availed himself of the normal mode of appeal provided him by section 1105a, it is said, should the courts entertain a plea for the extraordinary relief of habeas corpus. There is force and reason in this contention as well; however, to apply it now would be to bar Marcello from any review whatever, the six–month period for an appeal having long passed. Absent a finding of deliberate bypass of the direct appeal,[12] we do not believe such an outcome just or appropriate.

■ Finally, the government argues persuasively that Congress intended by section 1105a to restrict habeas review to the constitutional minima, both as to availability and as to scope of review. There can be no doubt that there exists a constitutional core of habeas corpus authority, derived from the Common Law, guarded by Article I, section 9, and proof against congressional or executive tampering save in the event of invasion or rebellion. The statutory enactments overlaying the Great Writ–28 U.S.C. §§ 2241, 2254, and 2255–are, the argument runs, congressional additions to its scope that may be limited or withdrawn at the pleasure of the Congress so long as the constitutional core is not disturbed. This, according to the government, is what was done by section 1105a: a more than adequate statutory appellate remedy was provided, together with a highly restricted version of habeas–one embodying only the constitutional core, added solely to render the enactment constitutionally viable.

We agree with the government that such a plan and purpose would be a rational and probably desirable one. The difficulty here

Cir.), *cert. denied*, 363 U.S. 849, 80 S.Ct. 1627, 4 L.Ed.2d 1732 (1960). We have specifically held under § 2255, moreover, that "habeas will not be permitted to substitute for an appeal when the choice to seek habeas relief is made to seize some legal or tactical advantage." *Sosa v. United States*, 550 F.2d at 248; *accord, Morris v. United States*, 503 F.2d at 458; *Larson v. United States*, 275 F.2d at 679–80. The quest for such a tactical advantage–an added stage of review with its resulting delays–will doubtless usually be apparent in such cases as this.

11. We recognize that in *Cunningham* and *Hensley*, the parole and release cases discussed above in text, the release from (or absence of) physical custody occurred during the habeas proceeding, so that a holding that these events terminated custody would have aborted the ongoing habeas proceedings. The Court lays no special stress on this circumstance, however, and in *Hensley* the petitioner had in fact never been in physical custody at any time after the conviction as to which he sought the writ. The conditions of his custody, moreover, appear less stringent than those applied here to Marcello. *See* 411 U.S. at 348, 93 S.Ct. at 1573. Marcello is under supervised parole, which requires him to report quarterly to the INS and notify it whenever he intends to leave Louisiana for more than 48 hours. Hensley seems to have been subject to no reporting requirements except to appear when ordered to do so. *Id.*

12. The court below did not make such a finding. In the circumstances of this case, and in view of Marcello's long experience with the laws governing deportation and his demonstrated ability in evading them, we might almost do so as a matter of law. *See* Appendix A.

is that there is little or no indication, either in the statute or the legislative history, that it was the *congressional* plan and purpose in enacting section 1105a. To the contrary, as we have noted above, these materials seem to indicate that the Congress contemplated alternative methods of obtaining review, one available to aliens not "held in custody" and the other to those who were. We see little logic and less fairness in laying it down that the scope of review available to an alien may be narrowed by the occurrence of an event quite beyond his control, the action of the Attorney General in taking him into custody. Rather than such an effect, what Congress intended, we think, was to abolish in as many cases as possible the district court step in direct appeals and the employment by the alien of *both* modes of review successively. Our conclusion in this line is reinforced by the simple language of section 1105a(a)(9), providing that "judicial *review*" of the deportation order may be had in habeas corpus proceedings by an alien in custody.

Thus, it appears that the government's attacks on jurisdiction and propriety of review here must, perhaps unfortunately, fail.

### The Merits

■ Our standard of review of the order of the Board denying suspension of deportation, then, is the same as that on direct appeal of a final order of deportation. It is whether "reasonable, substantial, and probative evidence on the record considered as a whole" supports the order. 8 U.S.C. § 1105a(a)(4). That question is one of law as to which we review the district court's decision free of the trammels of the clearly erroneous standard. The district court concluded that substantial evidence did not support the order. We disagree.

In a majority opinion, reproduced in material part as Appendix B, the Board dismissed Marcello's application for suspension of deportation, both for failure to establish statutory eligibility and in the exercise of its discretion. It did so on the basis of numerous facts detailed therein, all of which are supported by substantial evidence in the record and most of which are not seriously disputed. Among these are a 1938 drug conviction, a 1930 state conviction for assault and robbery,[13] and a 1968 felony conviction for assault on a federal officer. In view of these matters, we cannot say that the Board's decision that Marcello failed to establish good moral character for the requisite ten-year period is unsupported by substantial evidence. Nor can we conclude that the Board's discretion to deny suspension was abused, a ground independent of the statutory prerequisites. *United States ex rel. Hintopoulous v. Shaughnessy,* 353 U.S. 72, 77 S.Ct. 618, 1 L.Ed.2d 652 (1957).

In vacating the order of the Board, the court below laid stress on the 1961 deportation and reentry of Marcello, refusing to countenance the Board's statement in its opinion that it did not consider these in arriving at its decision. That court further found fault with the Board's failure to state expressly in its opinion that it had considered character affidavits filed by Marcello and indicated that it believed the Board may have relied "on rumor and innuendo." We are unable to adopt these objections to the Board's order.

We see no reason to doubt the Board's statements that it disregarded the 1961 incidents. Well it might have, since whatever an irregular deportation may show about government behavior, it shows little or nothing about Marcello's moral character. As for the affidavits, there is no requirement that the Board set out expressly the evidence that it considered in arriving at its decisions; and we decline to indulge in any assumption that because no such list was given the Board failed to consider the evidence before it. Finally, the court gives no

---

**13.** For which Marcello received a sentence of nine to fourteen years. Of this, he served four years and was pardoned–the latter being a circumstance irrelevant for present purposes. *Cf. Qureshi v. I. N. S.,* 519 F.2d 1174 (5th Cir. 1975) (fact of conviction is all that is relevant under deportation statute; thus, fact that conviction resulted from plea of nolo contendere is irrelevant).

explanation for why it feels rumor and innuendo may have been improperly considered by the Board. We see little basis for such a conclusion. The evidence being sufficient to support its conclusions, we decline to assume that the Board acted improperly. Although Marcello may indeed have been the subject of rumor in his career, it does not follow that the decision of the Board was based on any such thing.

The judgment of the district court is REVERSED and that of the Board is AFFIRMED.

### APPENDIX A

In connection with hearings held by the Senate Select Committee on Improper Activities in the Labor or Management Field, the Department of Justice issued, on March 25, 1959, the following press release:

Department of Justice
Wednesday, March 25, 1959

For Immediate Release:

The Department of Justice made public today the following letter dealing with deportation proceedings against Carlos Marcello:

March 25, 1959

Hon. Sam J. Ervin, Jr.,
U.S. Senate.

Dear Senator Ervin: It has been called to my attention that yesterday at the hearing of the Senate Select Committee on Improper Activities in the Labor and Management Field you made inquiries concerning the deportation proceedings against Carlos Marcello. I thought you would be interested in knowing the steps the Department of Justice has taken to rid the country of this undesirable alien. Attached herewith is a summary of the chronology of the litigation involved in these proceedings.

You will notice that on six separate occasions Marcello has instituted various suits in the district courts of the United States raising issues incident to the deportation order. Each case has been contested vigorously. On several occasions, he has sought review in the court of appeals, and on three occasions has been to the Supreme Court of the United States. Although the deportation order has been successfully defended on all occasion, and the Government has been successful on most of the other issues raised, it has been under court–imposed restraint from deporting Marcello during much of this time.

During periods when there was no court imposed restraint deportation has not been possible because of the lack of an Italian passport, without which deportation was not possible. In August 1955 when travel documentation was available and Marcello had been directed to surrender for deportation, the Italian consul at New Orleans revoked the passport on the day he was to be deported. Thereafter, further litigation was instituted and was decided favorably to the Government. After continuous negotiations the Italian authorities on October 31, 1956, issued another passport which was limited in time. However, on the day before its issuance, Marcello filed a new suit and obtained a temporary restraining order preventing deportation.

Another suit was instituted by Marcello to delay deportation and, in addition, he started proceedings in the Italian courts for a judgment declaring him not to be a citizen of Italy, as a result of which the Italian Foreign Office was enjoined from issuing any travel documents until that suit is terminated. Nevertheless, the Government has continued to exert every effort for the issuance of an Italian passport and I have personally participated in this effort.

At the present time the deportation order against Marcello is still outstanding. In his last effort to delay deportation, he applied for an administrative stay on the ground that he would suffer physical persecution if deported to Italy. When this was denied and the Government's position upheld in the U.S. District Court for the District of Columbia, he sought review in the court of appeals. The latter court held that the Immigration Service had not given him adequate time to collect and present evidence in support of his claim that he would be subject to persecution. He was given such an opportunity and on February 20, 1959, the Service denied the requested relief.

Although presently there is no pending litigation, deportation cannot be effected because no passport is available. If this obstacle is overcome there is no guarantee that deportation can be expeditiously effected. On the basis of past experience it is expected that Marcello will attempt other delaying tactics in the courts.

In connection with the delays often encountered in effecting deportation, I would like to call your attention to the fact that the administration for the past 5 years has sought legislation which would strengthen our immigration laws by limiting judicial review of deportation orders within reasonable bounds so as to avoid its repeated use solely as a delaying tactic. There is now pending before the Congress H.R. 2807 which would carry out the administration's proposal.

It is highly desirable, in my opinion, that this legislation be passed. We have repeatedly called to the attention of the Congress the fact that under the present laws racketeers and other undesirables can frustrate deportation by repeated dilatory actions. It makes a mockery of the deportation process.

I urge the Congress to enact this much needed legislation at the earliest possible moment.

Sincerely,

William P. Rogers,
Attorney General

## CHRONOLOGY OF LITIGATION IN DEPORTATION PROCEEDINGS AGAINST CARLOS MARCELLO

December 30, 1952: Deportation proceedings instituted.

February 20, 1953: Ordered deported by reason of narcotic law violations.

June 1, 1953: Appeal to Board of Immigration Appeals dismissed.

June 2, 1953: Taken into custody and filed a petition for writ of habeas corpus.

June 8, 1953: Petition dismissed by U.S. district court in New Orleans, La., which found deportation order valid (113 F.Supp. 22).

May 6, 1954: Dismissal affirmed by Court of Appeals for the Fifth Circuit (212 F.2d 830).

May 31, 1955: Affirmed by Supreme Court (349 U.S. 302, 75 S.Ct. 757, 99 L.Ed. 1107), rehearing denied (350 U.S. 856, 76 S.Ct. 38, 100 L.Ed. 761).

June 1955: Suit for declaratory judgment challenging deportation order and to restrain Government from deporting filed in U.S. District Court for the District of Columbia (No. 2763–55).

August 26, 1955: Also filed petition for writ of habeas corpus in district court at New Orleans charging he was being detained illegally because Government was unable to deport him.

August 30, 1955: Last petition for habeas corpus dismissed, and bail pending appeal denied by both district court and Court of Appeals for the Fifth Circuit.

September 16, 1955: Mr. Justice Black ordered release on bail until deportation can be effectuated--upon condition he appear for deportation upon 3 days' notice.

October 10, 1955: Stipulation with Solicitor General providing for release upon administrative bail instead of judicial bail.

October 11, 1955: Justice Black vacated his order of September 16, 1955, and habeas corpus proceeding in Court of Appeals for the Fifth Circuit dismissed as moot.

October 19, 1955: Marcello released upon administrative bond, conditioned upon his production on 3 days' notice.

October 25, 1955: Declaratory judgment action in District of Columbia (No. 2763–55) dismissed, upon Government's motion for summary judgment.

October 25, 1955 to April 25, 1956: Government unable to deport because of lack of travel documents.

April 26, 1956: 6 months having expired subject directed to appear at local office of Immigration and Naturalization Service and notified he was enlarged on supervision as provided in section 242(d) of Immigration and Nationality Act of 1952. Administrative bond canceled.

April and May 1956: Subject objected to order of supervision, which limited his right to travel and contained no provision for 3 days' notice of deportation.

May 3, 1956: Immigration and Naturalization Service granted some relief with respect to travel limitation, but refused to assure 3 days' notice, which was contemplated only for period of administrative bail bond which had been canceled.

May 16, 1956: Marcello filed complaint in District Court for District of Columbia (No. 2046–56) requesting a judgment that Attorney General was violating the stipulation and interfering with petitioner's liberty in "gross." Also requested an injunction against the supervision order.

October 30, 1956: Filed motion for preliminary injunction against deportation except on 3 days' notice. District court issued such a restraining order.

October 31, 1956: Travel documents issued by Italian consul, which would have enabled Government to deport.

October 31, 1956: Marcello filed complaint in District Court for District of Columbia challenging validity of deportation order for third time (No. 4277–56).

November 1, 1956: Subject served with notice of intention to take him into custody and deport after expiration of 72 hours.

November 5, 1956: District court denied motion for preliminary injunction in No. 4277–56.

November 5, 1956: Appeal from district court's order denying preliminary injunction (C.A.D.C. No. 13,595) and stay of deportation pending appeal granted.

December 7, 1956: District court in same case (No. 4277–56) granted Government's motion for summary judgment and subject appealed therefrom (C.A.D.C. No. 13,653).

January 2, 1957: In case No. 2046–56, which was filed May 16, 1956, district court granted Government's motion for summary judgment dismissing complaint to enjoin enforcement of supervision order. Subject again appealed (C.A.D.C. No. 13,655).

June 13, 1957: Two of the appeals (No. 13,595 and No. 13,653) decided in favor of the Government (245 F.2d 279).

June 14, 1957: In the remaining case on appeal (No. 13,655) Government moved for leave to file a copy of the order of supervision as amended pursuant to decision of Supreme Court in *United States v. Witkovich* (353 U.S. 194, 77 S.Ct. 779, 1 L.Ed.2d 765). Amendment left open only the issue of the necessity of a 3–day notice.

June 24, 1957: Subject moved that mandate in the cases already decided by the court of appeals (Nos. 13,595 and 13,653) be stayed, or in the alternative, that a stay of deportation be granted in the remaining case (No. 13,655) unless 3 days' notice of deportation be given.

August 1, 1957: Court of appeals denied motion for stay of mandates in Nos. 13,595 and 13,653 and in the remaining case challenging the supervision order (No. 13,655) remanded to the district court with directions to vacate its judgment and with directions to dismiss as moot the complaint as to the question of the validity of restrictions imposed by the prior order of deportation.

October 17, 1957: Subject filed a new suit for declaratory and injunctive relief against the Attorney General in the District Court for the District of Columbia charging in essence that he had applied for a stay of deportation under section 243(h) of the Immigration and Nationality Act on the ground that he would be subject to physical persecution if deported to Italy; and that the stay was denied because of bias and prejudice, and unfair hearings and the application of improper statutory standards.

October 24, 1957: Subject filed in Supreme Court petition for certiorari, from last order.

December 16, 1957: Supreme Court denied certiorari.

March 25, 1958: The district court granted the Government's motion for summary judgment.

October 10, 1958: The court of appeals vacated the judgment below and remanded

the case to the district court with directions to remand the case to the Service for further proceedings at which plaintiff shall be offered a reasonable period (in any event not less than 3 weeks) with which to gather and present further evidence in support of his application.

January 12, 1959: The special inquiry officer recommended denial of the application.

February 20, 1959: The regional commissioner, Richmond, denied the application.

November 23, 1956: Marcello filed a suit in the civil court of Rome, Italy, for a judgment declaring him to be not a citizen of Italy and to enjoin the Italian Government from issuing a travel document to him.

August 11, 1958: Hearing in civil court of Rome adjourned to October 25, 1958.

October 25, 1958: Hearing set for January 15, 1959, on Marcello's request for letters rogatory.

January 15, 1959: Hearing postponed to May 16, 1959.

December 20, 1960: Civil court of Rome ordered briefs within 30 days to explain necessity for taking interrogatories in United States.

March 9, 1961: Rome court denied motion for letters rogatory. (Appeal may be taken to the tribunal.)

April 4, 1961: Marcello deported to Guatemala.

April 5, 1961: Complaint in new action, No. 1035–61, filed in District Court, District of Columbia, for judgment declaring his deportation unconstitutional and for injunctive and other relief.

April 21, 1961: Three–judge court convened to decide constitutionality of deportation statute.

May 16, 1961: Three–judge court held that complaint presented only a claim of unconstitutionality of the result obtained by the use of the statute which was not attacked as unconstitutional. Marcello's motion for a preliminary and permanent injunction denied, three–judge court dissolved

and case remanded to single–judge district court for appropriate action on other issues.

May 19, 1961: District court granted Government's motion for summary judgment.

June 2, 1961: Marcello filed motion for reconsideration and to set aside judgment of May 19, 1961.

June 16, 1961: District court denied Marcello's motion of June 2, 1961.

April 13, 1961: Complaint filed in action No. 1126–61, District Court, District of Columbia, against Commissioner of Internal Revenue, Attorney General, and Commissioner of Immigration and Naturalization for a declaratory judgment and for injunctive relief to cancel tax assessments and to set aside tax liens.

May 10, 1961: Defendants filed motion to dismiss complaint.

May 25, 1961: Defendants' motion to dismiss granted and Marcello's action dismissed as moot.

June 2, 1961: Marcello having returned to the United States (subsequent to May 8, 1961) a complaint was filed against the district director at New Orleans and the officer in charge at Shreveport (Marcello as plaintiff) in the District Court, Western District of Louisiana, No. 8311, to enjoin defendants from detaining Marcello pending final decision of his pending suit in the District Court for the District of Columbia and from removing him from the State.

June 5, 1961: Complaint dismissed for lack of jurisdiction over the subject matter. (No affirmative showing by competent evidence that Marcello was then within the court's jurisdiction).

June 13, 1961: Marcello filed a motion to set aside and modify the court's findings and conclusions of June 5, 1961.

## TYPICAL EXAMPLES OF ABUSE OF JUDICIAL PROCESS

The alien, Marcello (see chronology, supra) was ordered deported in 1953 on a

narcotic charge. Since that time, the chronology of his judicial proceedings presents an unparalleled picture of legalistic jousting with the U.S. Government. He also was before the Supreme Court of the United States several times. He questioned not only the deportation procedures, but the constitutionality of the law. He is still unsuccessful but is still advancing appeals and requests through the various courts, wherever he can find a willing ear, hunting a forum which will grant him another stay or injunction. Marcello is an alien whose criminal domain has its headquarters in the vicinity of New Orleans, La. However, he is apparently not satisfied with the judicial remedies available to him there, but he has chosen to bring his multitudinous court actions in Italy as well as against the Attorney General in the courts of the District of Columbia—obviously a maneuver to gain the delays resulting from the crowded calendars in the overworked courts of the District of Columbia and Italy. The committee has noted that Marcello's repetitious court proceedings are principally begun (with their accompanying requests for interim stays) just when the Government manages to obtain a travel document and is about to enforce his departure—many years after the order of deportation was entered.

.    .    .    .    .

## APPENDIX B

In re: Carlos Marcello or Calogero Minacori

Application: Suspension of deportation

In a decision dated July 11, 1973, after a reopened hearing, the immigration judge denied the respondent's application for suspension of deportation under section 244(a)(2) of the Immigration and Nationality Act both for failure to establish statutory eligibility and in the exercise of his discretion. The respondent has appealed from that decision. The appeal will be dismissed.

The alien respondent was born in Tunis, Africa of Italian parents on February 6, 1910. He was brought to the United States while an infant, but he never became a citizen of this country.

In 1938, the respondent was convicted in a federal court for a violation of the Marihuana Tax Act, and he was sentenced to one year imprisonment. On June 1, 1953, the Board entered a final administrative order of deportation against the respondent under section 241(a)(11) of the Act on the basis of the respondent's 1938 marihuana conviction; the Board also denied the respondent's application for suspension of deportation in the exercise of discretion. *Matter of M–*, 5 I&N Dec. 261 (BIA 1953). This administrative order was affirmed by the Fifth Circuit Court of Appeals, *Marcello v. Ahrens*, 212 F.2d 830 (5th Cir. 1954), and by the United States Supreme Court, *Marcello v. Bonds*, 349 U.S. 302, 75 S.Ct. 757, 99 L.Ed. 1107 (1955), rehearing denied, 350 U.S. 856, 76 S.Ct. 38, 100 L.Ed. 761 (1955).

For a period of time thereafter, the Government was unable to effect the respondent's deportation. On April 4, 1961, however, the Government was able to deport the respondent to Guatemala. Thereafter, in approximately 1961, the respondent reentered the United States without securing permission to do so from the Government.

New deportation proceedings were instituted against the respondent. On December 20, 1961, the Board entered an order finding the respondent deportable under section 241(a)(11) on the basis of the 1938 conviction, and also finding the respondent deportable under section 241(a)(1) by reason of excludability at entry under section 212(a)(17) for failure to secure permission to reapply. That order of deportation has never been executed.

On August 13, 1963, the respondent moved to reopen deportation proceedings to challenge the validity of his 1961 deportation. In a decision dated October 22, 1963, the Board denied that motion on the ground that it was premature, without prejudice to resubmission at a later date.

On December 9, 1970, the respondent again moved to reopen deportation proceedings for the purpose of establishing that his 1961 deportation to Guatemala was illegal. The board denied that motion on February

25, 1971, noting that the respondent was clearly deportable on the section 241(a)(11) charge, and would soon satisfy the physical presence requirement for suspension of deportation under section 244(a)(2). Therefore, the Board stated that it would be pointless to reopen for a time–consuming inquiry into a matter that would have no material bearing on the respondent's deportability and little on his eligibility for suspension of deportation. The respondent's petition for judicial review of the Board's 1971 order was dismissed as moot by the Fifth Circuit Court of Appeals. *Marcello v. INS*, 449 F.2d 349 (5 Cir. 1971).

On February 4, 1972, we granted the respondent's motion to reopen deportation proceedings for the purpose of allowing the respondent to apply for suspension of the deportation order under section 244(a)(2) of the Act. It is from the immigration judge's denial of this relief that the present appeal was taken.

Initially, counsel has again raised the issue of the legality of the 1961 deportation. We adhere to our earlier position, that this issue is not germane to either the respondent's deportability or his suspension application. The respondent clearly is deportable on the section 241(a)(11) charge regardless of the validity of the 1961 deportation. Since the respondent has been physically present in the United States for more than ten years since 1961, the legality of his deportation in that year is not material to his present application for suspension under section 244(a)(2).

Nevertheless, counsel contends that the 1961 deportation is relevant to the issue of discretion because (1) a second violation of the immigration laws for illegal entry in 1961 would be an adverse factor, and (2) an alien with uninterrupted physical presence since 1910 would be in a better position than an alien with uninterrupted physical presence only since 1961. The short answer to this contention is that we have not considered either of the foregoing factors as bearing on the respondent's suspension application. Our present decision is in no way based on either the manner of the respondent's 1961 entry or the fact that his continuous physical presence since 1910 was interrupted for about a month in 1961.

The respondent has the burden of proof with respect to his application for suspension of deportation, 8 C.F.R. 242.17(d). In order to establish eligibility for relief under section 244(a)(2), the respondent must show: (1) physical presence in the United States for a continuous period of not less than ten years immediately following the commission of an act, or the assumption of a status, constituting a ground for deportation; (2) good moral character for a period of at least ten years preceding his application; and (3) deportation would result in exceptional and extremely unusual hardship to himself or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence. In addition to establishing that he meets the foregoing statutory requisites, the respondent must also establish that he merits a favorable exercise of discretion. *See U.S. ex rel. Hintopoulous v. Shaughnessy*, 353 U.S. 72, 77 S.Ct. 618, 1 L.Ed.2d 652 (1957).

It is undisputed that the respondent has met the ten–year continuous physical presence requirement.

With respect to the issue of good moral character, we have already mentioned the respondent's 1938 conviction which involved two transfers of bulk marihuana totaling 380 ounces. In addition, the respondent was convicted in 1930 for assault and robbery under Louisiana law and received a sentence of nine to fourteen years imprisonment. He actually served four years of his sentence and received a pardon in 1935.

In 1968, during the period for which good moral character is required, the respondent was convicted under 18 U.S.C. § 111 for assaulting an F.B.I. agent, a felony. The respondent was sentenced to two years imprisonment and a $5,000 fine. The sentence of imprisonment, however, was later reduced to six months with two years probation. The respondent actually served 150 days of his prison sentence. It also has been conceded by the respondent that during the years 1945–51 he derived his income from gambling.

Since the respondent served less than 180 days in prison for his 1968 conviction, he avoids the statutory bar to a finding of good moral character contained in section 101(f)(7) of the Act. Since the respondent has not been shown to have derived his income principally from gambling during the last ten years, he also avoids the preclusion contained in section 101(f)(4) of the Act. However, the fact that the respondent's conduct is not within the grounds enumerated by the statute does not prevent us from considering it in making an overall assessment of good moral character. See section 101(f), Immigration and Nationality Act.

It is also clear that conduct occurring prior to the period for which good moral character is required can be considered in determining whether the respondent has been a person of good moral character during that period. *Matter of Peralta*, 10 I&N Dec. 300 (BIA 1963); cf. *Yuen Jung v. Barber*, 184 F.2d 491 (9 Cir. 1950); *In re Suey Chin*, 173 F.Supp. 510 (S.D.N.Y.1959). Contrary to the position taken by counsel, the respondent's pardon for his 1930 conviction does not preclude us from considering the fact that the violation of law occurred in judging the respondent's moral character. Cf. *Matter of H–*, 6 I&N Dec. 619 (BIA; A.G. 1955); *In re Paoli*, 49 F.Supp. 128 (N.D.Cal.1943); *In re Bookschnis*, 61 F.Supp. 751 (D.Ore.1945); *Taylor v. United States Civil Service Commission*, 374 F.2d 466 (9 Cir. 1967).

The respondent's criminal record covers a span of 38 years, going back to 1930. During at least a portion of this time, the respondent's income was derived from gambling. The respondent's most recent conviction, for a felony, occurred within the ten–year period for which good moral character is required, and he was imprisoned for a period just short of that which would have precluded him from establishing good moral character. On these facts we find no evidence of the type of character reformation that would warrant a finding of good moral character for the statutory period. Consequently, we conclude that the respondent has failed to meet the good moral character requirement of section 244(a)(2) of the Act.

The immigration judge also found that the respondent had failed to meet the "exceptional and extremely unusual hardship" requirement of section 244(a)(2). In light of our finding that the respondent lacks the requisite good moral character, we need not determine whether the respondent has met the hardship requirement.

Even if the respondent were able to establish statutory eligibility for suspension of deportation, we would still deny such relief in the exercise of discretion. There is no doubt that the respondent's deportation would result in some hardship to him and to his family. Nevertheless, we believe that the respondent's longstanding criminal record, his imprisonment, and his gambling activities, combined with his lack of character reformation, outweigh the hardship to the respondent and his family. The respondent has failed to establish that he merits a favorable exercise of discretion.

The respondent's application for suspension of deportation under section 244(a)(2) of the Act must be denied both for failure to establish statutory eligibility and in the exercise of discretion. The result reached by the immigration judge was correct. Accordingly, the appeal will be dismissed.

ORDER: The appeal is dismissed.