Fidel GALLEGO, Petitioner,

v.

IMMIGRATION AND NATURALIZA-
TION SERVICE, Respondent.

No. 86–C–611–C.

United States District Court,
W.D. Wisconsin.

June 12, 1987.

**518**

Teresa M. Elguezabal, LaFollette & Sinykin, Madison, Wis., for petitioner.

Sheree Gowey, Asst. U.S. Atty., Madison, Wis., for respondent.

## ORDER

CRABB, Chief Judge.

This is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner, who is presently incarcerated at the Trempeleau County Jail at Whitehall, Wisconsin, alleges that he has been detained by respondent since July, 1986, in violation of his constitutional rights.[1] The Immigration and Naturalization Service, rather than the custodian of the Trempeleau County Jail, is the respondent in this petition for habeas corpus, because petitioner is being detained by the INS pending deportation as an excludable alien.

This case was referred to the United States Magistrate, and on February 27, 1987, the magistrate recommended that the petition be denied with leave to reinstate unless on or before May 1, 1987 respondent apprised petitioner why his deportation was not "practicable or proper" under 8 U.S.C. § 1227(a). Petitioner requested and was granted the assistance of appointed counsel for the purpose of filing objections to the magistrate's report and recommendation. This case is before the court on petitioner's objections to the magistrate's report and recommendation.

The magistrate's report included a section labelled "Factual Background" which included proposed findings of fact based upon certified copies of documents from respondent's file on petitioner that were submitted with the response to the petition. I have adopted some of these findings as the court's own, and have made additional findings based upon documents contained in the record.

### Findings of Fact

Petitioner, a Cuban citizen, arrived by boat from Mariel, Cuba at Key West, Florida on June 11, 1980.

Petitioner was paroled into the United States on September 24, 1980, pursuant to section 212(d)(5) of the Immigration and Nationality Act (8 U.S.C. § 1182(d)(5)).

The records of the Chicago Department of Police indicate that petitioner was arrested for theft or retail theft on the following dates: May 17, 1981; September 23, 1981; April 10, 1982; July 20, 1982; and September 10, 1983. It is not clear from the record what disposition was made of these charges.[2]

Petitioner was arrested for burglary on June 6, 1984. On July 5, 1984, the State's Attorney for Cook County, Illinois filed an information charging petitioner with residential burglary, possession of burglary tools and theft of property with a value of more than $300 on June 6, 1984. Each of these charges is a felony under Illinois law.[3]

On January 10, 1985, petitioner entered a plea of guilty to the charge of residential burglary. It is not clear from the record whether petitioner also pleaded guilty to the charges of possession of burglary tools and theft, or whether these charges were dropped. On the same date, judgment was entered on the conviction and petitioner

---

1. Petitioner's surname was given as Gallego in the petition for a writ of habeas corpus. It also appears in the record as Gallegos, Gallegos-Arranza, Gallegos-Arranz, Arran Gallegos, and Arran. Respondent was referred to in the original petition as "Immigration and Nationalization Service," but this has been corrected in subsequent filings and orders.

2. This finding is based on a criminal history sheet issued by the Chicago Department of Police and certified as a copy from respondent's file. The abbreviations used on this sheet are not explained, and it is possible that the sheet may indicate more arrests than I have found.

3. Illinois Annot.Stats. ch. 38, §§ 19-2, 19-3, and 16-1(e)(3).

was sentenced to the custody of the Illinois Department of Corrections for four years, with credit time from June 6, 1984.

On August 1, 1985, respondent sent a Notice of Action to the warden of the Logan Correctional Center in Lincoln, Illinois, where petitioner was apparently incarcerated. The Notice of Action advised the warden that respondent had initiated an investigation to determine whether petitioner was entitled to remain in the United States, and requested that respondent be notified at least thirty days prior to petitioner's release.[4]

On July 10, 1986, petitioner was served with notice that the parole issued to him on September 24, 1980 was terminated and that a further inspection and hearing would be conducted to determine whether he was admissible into the United States. The notice referred to an accompanying document, form I–122, "Notice to Applicant for Admission Detained for Hearing Before Immigration Judge," as setting forth the reasons that petitioner was believed to be excludable from the United States and designating the time, date, and place of the hearing.

Form I–122 was signed by a United States Immigration Officer and stated in pertinent part:

You do not appear to me to be clearly and beyond a doubt entitled to enter the United States as you may come within the exclusion provisions of Section 212(a)14 of the Immigration and Nationality Act, as amended [8 U.S.C. § 1182(a)(14)], in that

You are an alien seeking to entry [sic] the United States for the purpose of performing skilled or unskilled labor without a labor certification from the Dept of Labor; 212(a)20 [8 U.S.C. § 1182(a)(20)] in that you are alien [sic] without an immigrant visa or any other valid entry document; 212(a)9 [8 U.S.C. § 1182(a)(9)] in that you have been convicted of commiting [sic] more than one crime involving moral turpitude of which one crime

resulted in confinement in prison or correction [sic] institution;

Therefore you are detained under the provisions of Section 235(b) of the Immigration and Nationality Act, as amended [8 U.S.C. § 1225(b)], for a hearing before an Immigration Judge to determine whether or not you are entitled to enter the United States or whether you shall be excluded and deported. During such hearing you will have the right to be represented by counsel and to have a friend or relative present.

The form provided blank spaces to be filled in with the hearing date and location, but the blanks were not filled in.

The petition for a writ of habeas corpus was filed on August 22, 1986. At the time the petition was filed, petitioner was incarcerated at the Trempealeau County Jail at Whitehall, Wisconsin, in the custody of respondent.

On September 23, 1986, respondent issued a memorandum directed to "Immigration Judge" requesting that petitioner's case be scheduled for an immediate exclusion hearing.

An exclusion hearing was held on December 5, 1986, in Chicago, Illinois. The immigration judge issued an oral decision. A memorandum of that decision indicates that petitioner was ordered "excluded and deported" and that petitioner's application for asylum or withholding of deportation was denied. The memorandum does not indicate the basis for these decisions. The memorandum does indicate that the immigration judge's decision would be final unless an appeal was taken to the Board of Immigration Appeals by returning three copies of a notice of appeal to the immigration judge within five days, with a fee of $50. Also, the memorandum contains the statement "The INS/Respondent/Applicant has/have waived/reserved appeal," with the words "Respondent," "has," and "reserved" blacked out, so that the statement reads "The INS/Applicant/ have

***

4. It is not clear from the record when petitioner was released from state custody or when his detention by respondent commenced. The magistrate requested this information from the Assistant United States Attorney assigned to the case, but she was unable to provide it.

waived/appeal." The memorandum refers to petitioner as "Respondent/Applicant." [5]

Pursuant to the magistrate's report and recommendation, A.D. Moyer, a district director for respondent, sent petitioner a letter dated April 30, 1987. A copy of the letter, with attachments, was filed with the court. In the letter, Moyer states that the governments of the United States and Cuba do not currently have in effect a reciprocal immigration agreement because the Cuban government unilaterally suspended such an agreement on May 20, 1985, and that because no such agreement is in effect it is not practical or proper to deport petitioner at this time. Moyer states also that petitioner's departure from the United States will be delayed until arrangements can be made to effectuate his expulsion, and that during this time the Attorney General has authority to detain petitioner.

Attached to the Moyer letter and evidently in support of it is a copy of a declaration under penalty of perjury of James H. Michel.[6] The words "Executed in Washington, D.C. June __, 1985" are typed on the last page of the declaration, but no date has been written in. Michel states that he is the Principal Deputy Assistant Secretary of State for Inter-American Affairs, and as such is responsible for the formulation of United States policy with respect to Cuba, under the general supervision of the Assistant Secretary of State for Inter-American Affairs. Michel states further that he has been closely involved in the formulation and execution of United States policy respecting negotiations with Cuba concerning the return to Cuba of Cuban nationals who arrived in the United States during the

Mariel boatlift in 1980 and who are ineligible for admission into the United States either because they have committed serious crimes in Cuba or the United States, or because they have severe mental disorders.

The Michel declaration contains the following additional statements concerning negotiations between the United States and Cuba for the return to Cuba of Cuban nationals. On December 14, 1984, the United States concluded an agreement with Cuba providing for the return to Cuba of 2,746 individuals identified as ineligible by the Immigration and Naturalization Service, and providing also that the United States would resume issuance of preference immigrant visas in Havana and would establish a refugee program for Cuban ex-political prisoners. On May 20, 1985, the United States Voice of America introduced new programming on its broadcasts to Cuba, called the "Radio Marti" program. The government of Cuba responded to the start-up of the Radio Marti program by issuing a statement indicating that it intended "to suspend all formalities regarding the execution of the agreement on immigration matters signed by delegations of the two governments on 14 December 1984 in New York City."

Michel suggests that Cuba's decision to "suspend all formalities regarding the execution of the agreement" is probably not permanent. Also, Michel states that whether Cuba will resume implementation of the agreement depends on "the ongoing diplomatic process," and that

> The success of that process depends in part on the ability of the United States to demonstrate that it remains in a position

---

**5.** In a letter to the parties dated February 10, 1987, the magistrate noted that the record before him did not reveal whether an exclusion hearing had been held for petitioner, and requested that the government supplement the record on this and several other matters. In response, the attorney for respondent submitted a letter with attachments, dated February 18, 1987. One attachment to the letter is a copy of the memorandum of the immigration judge's oral decision of December 5, 1986. This copy is not properly admissible into evidence, since it is neither authenticated as provided in Rule 901 of the Federal Rules of Evidence, nor self authenticating under Rule 902(2) or (4). However, peti-

tioner has had an opportunity to object to the magistrate's proposed findings of fact, and has not objected to the findings based on the memorandum. Therefore, I have found from the memorandum that petitioner was ordered excluded and deported, that his application for asylum was denied, and that the memorandum contained the statements quoted concerning appeal of the immigration judge's decision.

**6.** The Michel affidavit, like the copy of the immigration judge's memorandum of decision, is unauthenticated and uncertified.

to perform all aspects of the Agreement, that Cuba will be expected to perform its obligations if it is to receive the benefits of the Agreement, and that continued suspension does not serve the interests of either government. This posture would be undermined if the courts concluded prematurely that flights returning excludables to Cuba will not be resumed and began to order the release of detainees. Such action would create an incentive for Cuba to delay a decision on renewed implementation of the Agreement in the hope that a prolonged interruption of flights returning excludables would diminish the number of excludables who, as a practical matter, could later be returned to Cuba. This would encourage Cuba to believe that it could receive the benefits for which it bargained under the Agreement—renewed migration to the United States—while minimizing the burdens of accepting the return of excludables, and thereby take advantage of the United States.

Also attached to the Moyer letter are copies of Express Mail receipts addressed to petitioner and his attorney. Apparently, the receipts were submitted to demonstrate service on petitioner, but they are not signed by petitioner or his attorney.

Petitioner remains in the custody of respondent.

*Opinion*

█ The original basis for the petition for a writ of habeas corpus was petitioner's claim that he was being detained without a hearing. An exclusion hearing was held subsequent to the filing of the petition, and petitioner was ordered "excluded and deported."[7] Therefore, the magistrate found that petitioner's claim that he was being held without a hearing was moot. The magistrate did not consider whether respondent abused its discretion by revoking petitioner's parole or finding him to be excludable, since these issues were not raised in the petition. The magistrate went on to consider whether either the Immigration and Nationality Act, 8 U.S.C. § 1101 *et seq.*, or the Constitution was violated by respondent's continued detention of petitioner subsequent to the finding that he is excludable. Relying on *Palma v. Verdeyen*, 676 F.2d 100 (4th Cir.1982) and *Fernandez-Roque v. Smith*, 734 F.2d 576 (11th Cir.1984), he concluded that petitioner's continued detention did not violate the statutory scheme of immigration, and relying on *Shaughnessy v. Mezei*, 345 U.S. 206, 73 S.Ct. 625, 97 L.Ed. 956 (1953), he concluded that the detention did not violate the Constitution. The magistrate recommended that the petition for a writ of habeas corpus be denied unless by May 1, 1987 respondent apprised petitioner why his deportation was not "practical or proper" under 8 U.S.C. § 1227(a).

In a thorough and well-argued objection to the magistrate's report and recommendation, petitioner has challenged the magistrate's conclusions on a variety of grounds. First, petitioner argues that since his habeas petition was originally submitted without assistance of counsel, he should be permitted now to raise objections to respondent's decision to terminate his parole and to find him excludable. Second, petitioner contends that the Immigration and Nationality Act permits only temporary detention of an excludable alien, not permanent detention. Third, petitioner contends that respondent's own regulations require that if petitioner cannot be deported within a reasonable time, he must be released unless

---

7. There is an important difference between "exclusion" and "deportation" under the Immigration and Nationality Act that is glossed over by the immigration judge's order that petitioner be "excluded and deported." Aliens who have not gained legal entry to this country are "excluded," while aliens who have gained legal entry are "deported." There are separate statutory provisions for exclusion and deportation. The statute under which petitioner was paroled into this country, 8 U.S.C. § 1182(d)(5), provides that

"such parole of such alien shall not be regarded as an admission of the alien ...". Thus, petitioner is legally in the position of an alien detained at the border, and the immigration judge's order was one of exclusion. Notwithstanding the legal importance of the distinction between exclusion and deportation, some sections of the Immigration and Nationality Act speak of the process of removal of an excludable alien from this country as "deportation."

the public interest requires continued custody. Finally, petitioner contends that his indefinite or permanent incarceration violates the Fifth Amendment. Petitioner urges this court to retain jurisdiction over his petition and to develop a record on the following points: the number of his convictions for crimes of moral turpitude (which is relevant to respondent's decision to exclude and deport him); the steps respondent is taking to deport him, likelihood of deportation, and expected time frame for deportation; if respondent contends that public interest requires his continued detention, the factual basis for this determination and the procedures for reviewing the determination at a later time; and the availability of less restrictive conditions of confinement and the procedures open to him for alternative placement.

## I. Termination of Parole and Order of Exclusion

Petitioner contends that he should be permitted to raise objections to respondent's decision to terminate his parole and to find him excludable, because he was not represented by counsel when he filed his petition for habeas corpus. Respondent contends that petitioner waived his right to challenge these determinations by not appealing them and thereby exhausting his administrative remedies, as required under 8 U.S.C. § 1105a(c). Respondent further contends that petitioner's earlier *pro se* status is irrelevant because petitioner could have had an attorney represent him at the exclusion hearing, under 8 U.S.C. § 1362.

■ The fact that petitioner was not represented by counsel at the time he filed his petition would not be a reason, in and of itself, for permitting him to seek judicial review of respondent's determinations. Even if petitioner had been represented by counsel at the time he filed the petition, he would not have been able to raise objections at that time to the finding that he is an excludable alien, because he was not found to be excludable until some four months after the petition was filed. The question whether petitioner can seek judicial review of respondent's determinations

at this time depends not on whether he was represented by counsel when he filed his petition in this court, but rather on whether he has exhausted his opportunities to seek administrative review of those determinations.

8 U.S.C. § 1105a(c) provides in part that an order of deportation or exclusion shall not be reviewed by any court if the alien has not exhausted the administrative remedies available to him as of right under the immigration laws and regulations. Respondent contends that petitioner has not exhausted his administrative remedies as required by this statute and that as a consequence this court lacks subject matter jurisdiction to review the order of exclusion, citing *Bothyo v. Immigration and Naturalization Service*, 783 F.2d 74 (7th Cir.1986); *Townsend v. United States Department of Justice I.N.S.*, 799 F.2d 179 (5th Cir.1986); and *Garcia-Sarquiz v. Saxbe*, 407 F.Supp. 789, *aff'd* 527 F.2d 1389 (5th Cir.1976).

It is not clear whether petitioner has exhausted his administrative remedies and is entitled to seek judicial review of respondent's determinations. I am unable to make this determination because it is unclear whether petitioner, respondent, or both have waived their right to appeal the immigration judge's decision that petitioner is excludable, and, assuming that one or both parties made such a waiver, what the effect of such a waiver would be.

The memorandum of the immigration judge's oral decision ordering petitioner "excluded and deported" and denying his application for asylum or withholding of deportation indicates that the decision would be final unless an appeal were taken to the Board of Immigration Appeals within five days. The memorandum indicates that an appeal could be taken by returning three copies of a notice of appeal to the immigration judge within three days, together with a fee of $50. The memorandum contains the statement, "The INS/Applicant/have waived/appeal." Since petitioner is referred to in the memorandum as Respondent/Applicant, this statement appears to indicate that both petitioner and respondent waived an appeal of the immigration judge's decision.

Because respondent was the prevailing party at the exclusion hearing, it is puzzling why respondent would make an explicit waiver of its right of appeal. Presumably there would have been no reason for respondent to appeal in any case. However, this is the import of the memorandum of the immigration judge's decision. If in fact respondent waived its right to appeal, this has a bearing on the issue of exhaustion, since the United States Supreme Court has held that agencies may be permitted to waive a statutory requirement of exhaustion in some cases, even though exhaustion is a prerequisite to jurisdiction. *Mathews v. Diaz,* 426 U.S. 67, 75–77, 96 S.Ct. 1883, 1889–90, 48 L.Ed.2d 478 (1976). *Mathews* has been applied to exhaustion under 8 U.S.C. § 1105a(c). *Garcia-Mir v. Smith,* 766 F.2d 1478, 1488 (11th Cir.1985).

It is equally unclear whether petitioner made an effective waiver of his right to appeal the immigration judge's decision that he is excludable to the Board of Immigration Appeals. Petitioner is indigent and apparently does not speak English, and it does not appear that he was represented by counsel. (Respondent cites 8 U.S.C. § 1362 and argues that petitioner could have had counsel at the exclusion hearing, but since § 1362 specifically authorizes representation by counsel for any person concerned in an exclusion hearing "at no expense to the Government," it seems unlikely that petitioner had counsel under this section.) In order to take an appeal of the immigration judge's decision that he was excludable, petitioner would have had five days to prepare three copies of a notice of appeal, presumably in English, and would have had to file the notices, with a $50 fee, with the immigration judge. 8 C.F.R. § 236.7, which governs appeals in exclusion cases, makes no provision for waiver of fees for indigents. It seems obvious that it would have been very difficult, perhaps impossible, for petitioner to appeal the immigration judge's decision. Under the circumstances, it is not clear that petitioner's waiver of his right to appeal was knowing and voluntary.

Whether petitioner made an effective waiver of his right to appeal to the Board of Immigration Appeals has a bearing on the issue of exhaustion. If petitioner made an effective waiver of his right to appeal, it is possible that petitioner would be entitled to judicial review of respondent's determinations under 8 C.F.R. § 236.6, which provides that an order of an immigration judge "shall be final" except where an appeal is taken. If petitioner has not made an effective waiver, it is possible that petitioner would be required to take such an appeal before this court could review respondent's determinations. However, if it is impossible for petitioner to take an appeal without paying $50, then it would seem that, as an indigent, petitioner has exhausted the remedies that respondent will provide, and ought to be entitled to judicial review of respondent's determinations without further agency proceedings.

Because the present record is not clear whether respondent, petitioner, or both have waived their right to appeal the immigration judge's decision, and because waiver by either side is relevant to the question whether petitioner has exhausted his administrative remedies and is entitled to judicial review of respondent's determination to terminate his parole and find him to be excludable, I will require that respondent supplement the record on the following points: 1) whether respondent waived its right to appeal the immigration judge's determination that petitioner is excludable; 2) whether petitioner made a knowing and voluntary waiver of his right to appeal the immigration judge's determination; and 3) whether respondent has any provision for waiver of the $50 appeal fee for indigents in exclusion hearings. Petitioner will be given an opportunity to respond to respondent's submission. Once this information has been provided, I will determine whether petitioner is entitled to judicial review of respondent's termination of his parole and finding that he is excludable.

## II. Legality of Respondent's Detention of Petitioner Subsequent to Order of Exclusion under the Immigration and Nationality Act

Petitioner was ordered excluded and deported after the exclusion hearing on De-

**524**

cember 5, 1986. Petitioner has remained in respondent's custody since that time. The only matter contained in the record concerning the possibility of deportation of persons in petitioner's position is the opinion of a principal deputy assistant secretary of state for inter-American affairs that Cuba's decision not to accept return of its nationals is probably not permanent. That opinion appears to have been reached sometime during June 1985. I have already noted that this statement is not properly admissible into evidence; furthermore, it predates petitioner's detention by a year and a half. There is no indication in the record that respondent has made any attempts to deport petitioner to Cuba or to any other country, or that it intends to make any such attempts in the future.

In his objections to the magistrate's report and recommendation, petitioner contends that both 8 U.S.C. § 1227(a)(1) and respondent's own regulations authorize only temporary detention of an excludable alien, not indefinite or permanent detention. Based on this interpretation, petitioner contends that respondent must do more than simply apprise him that his deportation is not "practicable or proper," as required by the magistrate's recommendation; instead, respondent must demonstrate either that his detention is temporary in fact and that negotiations for his deportation are occurring, or else that the public interest requires his continued custody. Respondent contends that the statute and regulations authorize petitioner's continued detention.

The Immigration and Nationality Act does not give respondent explicit authorization to detain excludable aliens indefinitely. It does give explicit authorization for the temporary detention of excludable aliens. There are two applicable provisions, 8 U.S.C. §§ 1225(b) and 1227(a)(1), which provide in part as follows:

§ 1225(b) Every alien ... who may not appear to the examining immigration officer at the port of arrival to be clearly and beyond a doubt entitled to land shall be detained for further inquiry to be conducted by a special inquiry officer. The decision of the examining immigra-

tion officer, if favorable to the admission of any alien, shall be subject to challenge by any other immigration officer and such challenge shall operate to take the alien, whose privilege to land is so challenged, before a special inquiry officer for further inquiry.

§ 1227(a)(1) Any alien (other than an alien crewman) arriving in the United States who is excluded under this chapter, shall be immediately deported, in accommodations of the same class in which he arrived, unless the Attorney General, in an individual case, in his discretion, concludes that immediate deportation is not practicable or proper.... The cost of the maintenance including detention expenses and expenses incident to detention of any such alien while he is being detained shall be borne by the owner or owners of the vessel or aircraft on which he arrived ...

8 C.F.R. § 212.5 governs parole of aliens into this country, and includes the following provision concerning detention of aliens whose parole has been terminated upon notice:

[The alien] shall be restored to the status which he or she had at the time of parole. Any further inspection or hearing shall be conducted under section 235 or 236 of the Act and this chapter, or any order of exclusion and deportation previously entered shall be executed. If the exclusion order cannot be executed by deportation within a reasonable time, the alien shall again be released on parole unless in the opinion of the district director the public interest requires that the alien be continued in custody.

8 C.F.R. § 212.5(d)(2).

The court of appeals for this circuit has explicitly reserved decision on the legality of respondent's indefinite detention of excludable aliens under the Immigration and Nationality Act. *Ramos v. Haig*, 716 F.2d 471, 474 (7th Cir.1983). Since the question is still an open one in this circuit, I have looked to the decisions of federal courts in other circuits for guidance.

Courts of appeals in other circuits have reached results that appear to conflict on the question whether the Immigration and Nationality Act permits indefinite detention of excludable aliens. The Court of Appeals for the Tenth Circuit has held that the applicable provisions of the Immigration and Nationality Act do not authorize indefinite detention as an alternative to exclusion. *Rodriguez-Fernandez v. Wilkinson*, 654 F.2d 1382, 1389–90 (10th Cir.1981). In contrast, the Courts of Appeals for the Fourth and Eleventh Circuits have held that the statute does not place a limit on the period during which the Attorney General may detain an excludable alien. *Palma v. Verdeyen*, 676 F.2d 100, 104 (4th Cir.1982); *Fernandez-Roque v. Smith*, 734 F.2d 576, 580 n. 6 (11th Cir.1984).

Like petitioner here, the petitioner in *Rodriguez-Fernandez* had been found to be an excludable alien and ordered deported. The only factual distinction between that case and this one is that the petitioner in *Rodriguez-Fernandez* had never been paroled, while petitioner in the instant case was paroled and then had his parole terminated. In *Rodriguez-Fernandez*, as in this case, the government was not able to carry out the order of deportation expeditiously, and could not speculate about a date of departure. Similarly, as in this case, no other country had been contacted about the possibility of accepting Rodriguez-Fernandez. 654 F.2d at 1384.

In holding that the Immigration and Nationality Act does not implicitly authorize indefinite detention of excludable aliens, the Court of Appeals for the Tenth Circuit was influenced by the fact that the Act specifically limits to six months the period of detention for an alien who has been found to be deportable. 8 U.S.C. § 1252(c); 654 F.2d at 1389–90. In light of the six month limitation of detention for deportable aliens, the lack of any evidence to suggest that significant numbers of excludable aliens had previously been physically detained for periods of long duration, and the fact that the provisions governing detention of excludable aliens are phrased in terms of temporary detention, the court of appeals concluded that detention of excludable aliens is permissible during proceedings to determine eligibility to enter this country, and thereafter during a reasonable period of negotiations for their return to the country of origin or to the transporter that brought them here. After such a period, an alien willing to risk the possible alternatives to continued incarceration (such as deportation to a country other than the country from which he came to the United States) would be entitled to release. The court of appeals found this interpretation to be consistent with accepted principles of international and constitutional law.

The magistrate relied upon *Palma v. Verdeyen* and *Fernandez-Roque v. Smith* rather than upon *Rodriguez-Fernandez v. Wilkinson*. Petitioner argues that the magistrate read *Palma v. Verdeyen* and *Fernandez-Roque v. Smith* incorrectly as authorizing indefinite or permanent detention of excludable aliens. Petitioner contends that these two cases should be read to require respondent to show that there is a basis for detention which is not so unreasonable as to constitute an abuse of discretion.

In *Palma v. Verdeyen*, 676 F.2d 100, the petitioner arrived in the United States without a visa or other entry papers and later gave a sworn statement that before he left Cuba he had been in prison for a second theft offense. Subsequently, he was found to be excludable as an alien who had been convicted of a crime of moral turpitude, 8 U.S.C. § 1182(a)(9), and an alien lacking a visa, passport, or similar document, 8 U.S.C. § 1182(a)(20); his appeal from this determination was dismissed. The Commission of the Immigration and Naturalization Service declined to grant petitioner parole. The commissioner's decision was based on Palma's disciplinary record during detention, which included the setting of ten fires at the prison, assaults on staff, fights with other detainees, and other disruptive conduct.

Following the denial of parole, Palma brought a petition for a writ of habeas corpus. The Court of Appeals for the Fourth Circuit applied an abuse of discre-

tion standard to the Attorney General's decision not to parole the petitioner, and concluded that the Attorney General's denial of parole was warranted by the petitioner's disciplinary infractions, together with his convictions for crimes of moral turpitude in Cuba. The court of appeals held also that it was not an abuse of discretion for the Attorney General to detain the petitioner pending further review of his suitability for parole in accordance with a plan promulgated by the Justice Department. 676 F.2d at 105–106. The Justice Department plan required subsequent review of a detainee within one year of a decision denying him parole, and allowed earlier review on the recommendation of the staff of the institution where the alien was detained. 676 F.2d at 102.

*Fernandez-Roque v. Smith,* 734 F.2d 576, involved what appears to have been the same Justice Department plan concerning parole of excludable aliens that was considered in *Palma v. Verdeyen.*[8] The petitioners raised a constitutional due process challenge to the plan as well as an argument that the plan constituted an abuse of the Attorney General's discretion. (Since this section of this opinion is concerned with the legality of the detention of excludable aliens under the Immigration and Nationality Act rather than under the Constitution, I do not consider the constitutional analysis in *Fernandez-Roque v. Smith* at this point.)

Under the Justice Department plan, aliens would remain in detention until suitable sponsors could be found for them even if they were approved for parole. The petitioners in *Fernandez-Roque v. Smith* argued that the federal government had abused its discretion by restricting the sponsorship of Cubans to families or structured half-way houses rather than individual non-family sponsors. The Court of Appeals for the Eleventh Circuit found sufficient evidence in the record to support the reasonableness of the parole procedure, in particular, the testimony that organizations were more likely to be successful in spon-

soring aliens than individuals. The court of appeals concluded that the plan was not so unreasonable as to constitute an abuse of discretion. 734 F.2d at 582–84.

I find persuasive petitioner's contention that neither *Palma v. Verdeyen* nor *Fernandez-Roque v. Smith* authorized indefinite or permanent detention of excludable aliens. In both of these cases the government demonstrated that it was making continuing efforts to prevent the petitioners' detention from becoming permanent. In *Palma v. Verdeyen,* the petitioner was eligible for further review of his suitability for parole within one year. The same provision was applicable to the petitioners in *Fernandez-Roque v. Smith* who had been denied parole, while those petitioners who had been found suitable for parole were being detained until suitable sponsors were found. In the context of these continuing efforts to prevent petitioners' detention from becoming permanent, the Courts of Appeals for the Fourth and Eleventh Circuits found that 8 U.S.C. § 1227(a) authorized the detention of excludable aliens.

Because both *Palma v. Verdeyen* and *Fernandez-Roque v. Smith* authorized respondent's detention of excludable aliens where the government could demonstrate that it was making continued efforts to prevent their detention from becoming permanent, these cases can be harmonized with *Rodriguez-Fernandez v. Wilkinson.* In *Rodriguez-Fernandez v. Wilkinson* there was no indication that the government was doing anything to prevent the petitioner's detention from becoming permanent. The court held that detention was permissible during a reasonable period of negotiations for the petitioner's return to his country of origin, and put the burden on the government to show that the detention "is still temporary pending expulsion, and not simply incarceration as an alternative to departure." In *Palma v. Verdeyen* and *Fernandez-Roque v. Smith* the government succeeded in showing that the petitioners' detention was temporary.

**8.** The Justice Department plan was to be reevaluated after all detainees had received subsequent reviews, 676 F.2d at 102, and apparently is no longer in effect.

■ I conclude that under the applicable case law, the Immigration and Nationality Act permits continued detention of an excludable alien only where the government can demonstrate that the detention is still temporary. The government can meet this burden by showing that it is actively negotiating for the alien's return to his country of origin, or to some other country; alternatively, the government can show that it has a procedure for periodic review of the alien's suitability for parole. This interpretation accords with the language of the Immigration and Nationality Act, which speaks of an alien's being "detained for further inquiry," 8 U.S.C. § 1225(b), and of "immediate" removal from this country, 8 U.S.C. § 1227(a)(1). It also accords with respondent's own regulations, which require that where an exclusion order cannot be executed within a reasonable time, the alien shall be released on parole unless the district director determines that the public interest requires the alien's continued custody. 8 C.F.R. § 212.5(d)(2).

No court that I am aware of has discussed the interplay between the statutory requirement that detention of excludable aliens may be temporary only, and the provision of 8 C.F.R. § 212.5(d)(2) that aliens must be released unless the district director determines that the public interest requires continued custody. However, ordinary principles of statutory construction dictate that a regulation cannot replace a statute. I conclude that an excludable alien can be detained based upon a district director's determination that the public interest requires continued custody only where the government can also establish that the detention is temporary.

Respondent contends that in *Rodriguez-Fernandez v. Wilkinson* the court did not adequately consider the public interest in protection of the American public from dangerous and undesirable aliens, and asserts that there has been an affirmative determination that petitioner in this case may prove dangerous upon release, citing petitioner's criminal conviction. However,

I can find no basis in the record for respondent's assertion that there has been such an affirmative determination. Respondent also contends that in *Rodriguez-Fernandez v. Wilkinson* the court relied improperly upon the fact that the period of detention permitted in deportation cases is limited explicitly by the statute. However, the analogy to the deportation provision was only one of the bases for the decision in *Rodriguez-Fernandez v. Wilkinson.* The court also relied on the language of the statutory provisions governing exclusion cases. For reasons already explained in this opinion, I am persuaded that the court in *Rodriguez-Fernandez v. Wilkinson* was correct in determining that the Immigration and Nationality Act permits only temporary detention of excludable aliens.[9]

■ In this case, the government has not met its burden of establishing that petitioner's detention is temporary. The only submission the government has made on this point is the Michel declaration, which sets forth its author's opinion that Cuba's decision not to take back its nationals may not be permanent. Even if this declaration were properly admissible, I would not be inclined to give it any weight. Although it is undated, it appears to have been prepared in June 1985, two years ago, and one and a half years before petitioner was found to be excludable. It is not a basis for concluding at this point that petitioner's continued detention is temporary.

The government will be given an additional opportunity to establish that petitioner's detention is temporary. It can do this by showing that it is actively engaged in negotiating for petitioner's return to Cuba or release in another country. Alternatively, it can do this by showing that it has procedures in place by which petitioner's eligibility for parole will be reconsidered periodically. Once the government has submitted the required materials, I will determine whether petitioner's continued detention constitutes an abuse of respondent's discretion. If the government fails

---

**9.** Respondent also contends that *Rodriguez-Fernandez v. Wilkinson* was incorrect as a matter of constitutional law, but I do not address this contention here.

to submit the required materials, the writ of habeas corpus will issue.

### III. Legality of Respondent's Detention of Petitioner Subsequent to Order of Exclusion under the Due Process Clause

In addition to his argument that the Immigration and Nationality Act does not authorize indefinite or permanent detention of excludable aliens, petitioner argues that the Fifth Amendment prohibits punishment unless one has first been convicted of a crime in the United States. Petitioner contends further that although temporary detention is not considered punishment, there is no indication here that his detention is temporary. Also, petitioner contends that even if respondent were to demonstrate that it is taking steps to effect his deportation, detention is only constitutionally permissible if it is not an excessive means to achieve the government's end.

 It is well established that federal courts should not pass on constitutional questions unless the adjudication is unavoidable. *Jean v. Nelson*, 472 U.S. 846, 105 S.Ct. 2992, 2998, 86 L.Ed.2d 664 (1985). Since I have found that the Immigration and Nationality Act permits only temporary detention of excludable aliens, I do not find it necessary to address petitioner's constitutional challenge to his detention at this time. If, later in the course of these proceedings, it becomes necessary to decide whether the due process clause imposes separate limitations on detention of excludable aliens, I will do so then.

IT IS ORDERED that respondent may have until July 6, 1987, to supplement the record on the following points:

1. Whether respondent waived its right to appeal the immigration judge's determination of December 5, 1986 that petitioner is an excludable alien;

2. Whether petitioner made an effective waiver of his right to appeal the immigration judge's determination that he is excludable;

3. Whether respondent has any procedure for waiver of the $50 appeal fee by indigent aliens; and

4. Whether respondent's detention of petitioner is temporary. Respondent can demonstrate that its detention of petitioner is temporary by showing either a) that it is actively pursuing negotiations for petitioner's return to Cuba or his release in some other country, or alternatively b) that it has procedures for periodic review of petitioner's eligibility for release on parole.

If respondent fails to submit these materials to the court by July 6, 1987, the writ of habeas corpus shall issue. If respondent submits the materials to the court as directed, petitioner may have until July 27, 1987 in which to submit any response he may choose to make.