Pedro TARTABULL

v.

Richard THORNBURGH.

Civ. A. Nos. 90–2185, 90–2192 to 90–2194, 90–2202, 90–2205 to 90–2208, 90–2262 to 90–2265, 90–2269, 90–2283, 90–2316, 90–2317, 90–2328 to 90–2330, 90–2360 to 90–2363, 90–2369, 90–2370, 90–2400, 90–2595 and 90–2596.

United States District Court, E.D. Louisiana.

Dec. 18, 1990.

Pedro Tartabull, pro se.

Reneé C. McGinity, Asst. U.S. Atty., U.S. Attorney's Office, New Orleans, La., for respondent.

**MEMORANDUM OPINION**

MENTZ, District Judge.

The petitioners in this case are citizens of Cuba who arrived in the United States during the 1980 Mariel boatlift (the Freedom Flotilla). They are being detained under the civil immigration detention powers conferred on the Attorney General by the Immigration and Nationality Act (the Act), 8 U.S.C. sections 1101–1524. The petitioners seek habeus corpus relief,[1] alleging that (1) the Act does not authorize the Attorney General to detain them indefinitely; (2) even if the Act does give the Attorney General the power to detain them indefinitely, the power is being exercised without regard to constitutional safeguards of due process; and (3) continued detention violates customary international law.

## I. STATUTORY AUTHORITY

■ The petitioners are being detained as excludable aliens[2] under section 212(a) of the Act. 8 U.S.C. section 1182(a). The Act provides explicitly for the temporary detention of excludable aliens. Sections 235 and 237 of the Act provide for the detention of an alien while determining whether the alien is excludable and subject to deportation. 8 U.S.C. sections 1225, 1227. Section 237 envisions an immediate deportation unless "immediate deportation is not practicable or proper." 8 U.S.C. section 1227(a).

The petitioners argue that the Attorney General has no statutory authority to detain them indefinitely. Once it was discovered that deportation to Cuba was not possible, they should have been released. The government, on the other hand, argues that the Act provides implicit authority to the Attorney General to detain indefinitely an

1. The government argues that the district court does not have habeus corpus jurisdiction over the petitioners' claims due to the comprehensive judicial review provisions provided in the Act. The court finds that habeus corpus is, however, an appropriate vehicle for relief in this case. *See, e.g., Salehi v. District Director, Immigration and Naturalization Serv.,* 796 F.2d 1286 (10th Cir.1986); *Diaz v. Haig,* 594 F.Supp. 1 (D.C.Wyo. 1981).

2. There is a difference between excludable and deportable aliens. The former are considered held at the border; they have never been granted admission to the United States. The latter have gained entry to the United States.

alien who cannot be returned to his country of origin.

The court finds the reasoning and conclusions of the Eleventh Circuit persuasive on this issue. *See Fernandez–Roque v. Smith*, 734 F.2d 576, 580 n. 6 (11th Cir. 1984); *see also Palma v. Verdeyen*, 676 F.2d 100, 103 (4th Cir.1982) ("indefinite detention of a permanently excluded alien ... is not unlawful"). In *Fernandez–Roque*, the court upheld the district court's determination that the Attorney General has implicit authority to detain excludable aliens indefinitely. The district court gave three reasons for its finding: (1) although the statutory scheme contemplates explicitly only a temporary detention prior to an immediate deportation, the Act also recognized that immediate deportation may not always be "practicable or proper"; (2) Congress failure to place an express limit on the time for detention of excludable aliens, while imposing a six-month limit for detention of deportable aliens, was intentional; and (3) because the authority of Congress and the executive is plenary in immigration matters, the court was unwilling to impose a statutory limitation on the power of the Attorney General to detain an alien where no such limitation was expressly provided for in the Act. *Fernandez–Roque v. Smith*, 567 F.Supp. 1115, 1124 (N.D.Ga. 1983), *rev'd on other grounds*, 734 F.2d 576 (11th Cir.1984). The district court was also reluctant to impose a statutory limitation on the Attorney General's detention authority because any limitation would require the release of a detainee without regard to his danger to the community or his ability to care for himself. *Id.*

In addition to the reasons provided by the Eleventh Circuit, the court finds the parole provision illuminating. 8 U.S.C. section 1182(d)(5)(A). Section 1182(d)(5)(A) affords the Attorney General a great deal of discretion in deciding whether to parole or to detain an excludable alien. Section 1182 of the Act provides that

> [t]he Attorney General may ... in his discretion parole into the United States temporarily under such conditions as he may prescribe for emergent reasons or for reasons deemed strictly in the public

interest any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Attorney General, have been served the alien shall forthwith return or be returned to the custody from which he was paroled....

8 U.S.C. section 1182(d)(5)(A).

Both the First Circuit in *Amanullah v. Nelson*, 811 F.2d 1, 6 (1st Cir.1987), and the Eleventh Circuit in *Jean v. Nelson*, 727 F.2d 957, 966 (11th Cir.1984), acknowledge that the scope of the authority delegated to the Attorney General in the area of parole is "particularly sweeping." *Jean*, 727 F.2d at 977. The First Circuit in *Amanullah*, after researching the legislative history of the Act's parole provision, concluded that "parole was meant to be the exception rather than the rule." *Amanullah*, 811 F.2d at 6. Congress intended that the Attorney General use his parole authority sparingly and only in emergency-type situations, if, for example, an alien were to require emergency medical care. *Id.*

If Congress intended a limited use of the parole power, it seems obvious that the Attorney General must be afforded the statutory authority to detain excludable aliens indefinitely. The alternative is to force the Attorney General to parole the aliens—an option that this court is certain Congress did not intend.

## II. VIOLATION OF THE FIFTH AND SIXTH AMENDMENTS

■ The petitioners allege that they are being deprived of their liberty without due process of law in violation of the fifth and sixth amendments. They further argue that they are being punished by imprisonment without the benefit of a jury trial in violation of the sixth amendment.

### A. *Fifth Amendment Right To Due Process of Law*

■ In the eyes of the law, these excludable aliens have not yet entered the country. *Garcia–Mir v. Meese*, 781 F.2d 1450,

**148**

1453 (11th Cir.1986). It is well settled that an alien seeking initial admission to the United States has no constitutional rights regarding his admission. *Landon v. Plasencia,* 459 U.S. 21, 32, 103 S.Ct. 321, 329, 74 L.Ed.2d 21 (1982). The alien has a constitutional due process right regarding his deportation only after he has been accorded legal resident alien status. *Id.; see also Amanullah v. Nelson,* 811 F.2d 1, 9 (1st Cir.1987) ("outside the context of admission and exclusion procedures, excludable aliens do have due process rights").

The petitioners do not allege that they have constitutional rights regarding the decision to deport. The petitioners are questioning the constitutional limits on the government's ability to deny them parole. To the petitioners, the indefinite detention is in effect a "punishment without trial" that is constitutionally impermissible. They claim that their constitutionally protected liberty interest has been denied them without due process of law.

■ The Eleventh Circuit has addressed this issue and has concluded that the decision to parole rather than to detain is an "integral part of the admissions process." *Jean v. Nelson,* 727 F.2d 957, 963 (11th Cir.1984); *see also Amanullah v. Nelson,* 811 F.2d 1, 8 (1st Cir.1987) (excludable aliens cannot challenge parole decisions on constitutional grounds). An alien is detained when the Attorney General decides to exclude him from the country; the alien has not passed the "threshold of initial entry." *Shaughnessy v. United States,* 345 U.S. 206, 212, 73 S.Ct. 625, 629, 97 L.Ed. 956 (1953). As the *Shaughnessy* Court stated, the government can require aliens arriving by boat to remain on their vessel pending a determination of admission. *Id.* at 215, 73 S.Ct. at 630. Permitting the aliens "temporary harborage" on shore, an "act of legislative grace," does not confer additional rights on the alien. *Id.*

■ Aliens who have not gained entry to the United States, such as the petitioners, have no constitutional liberty right under the Fifth Amendment. *See, e.g., Shaughnessy,* 345 U.S. 206, 73 S.Ct. 625, 97 L.Ed. 956; *Landon v. Plasencia,* 459 U.S. 21, 32, 103 S.Ct. 321, 329, 74 L.Ed.2d 21. The Supreme Court has stated that "the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law." *Nishimura Ekiu v. United States,* 142 U.S. 651, 660, 12 S.Ct. 336, 338, 35 L.Ed. 1146 (1892) (quoted in *Jean,* 727 F.2d at 968). Because the Attorney General acted under powers conferred on him by Congress, the petitioners do not have a claim for a violation of due process.

*B. The Sixth Amendment Right to a Trial by Jury*

■ The petitioners allege that the indefinite incarceration to which they are being subjected is a punishment which cannot constitutionally be imposed on them without a jury trial. The government responds that the detention is not punitive; the aliens have been detained to prevent them from unlawfully entering the United States.

■ The government has the authority to detain a person without a trial as a regulatory measure. The petitioners, citing *United States v. Melendez–Carrion,* 790 F.2d 984, 1007 (2d Cir.1986) (Feinberg, C.J., concurring), argue that a regulatory detention, if lengthy, becomes punitive. However, in *Melendez–Carrion,* the court was discussing the Bail Reform Act of 1984, which authorized pretrial detention on the grounds of dangerousness of those awaiting trial. 18 U.S.C. sections 3141–3156. The *Melendez–Carrion* court found this provision unconstitutional because it constituted a violation of the defendants' liberty interest.[3] Because of the finding of unconstitutionality on fifth amendment grounds, the majority in *Melendez–Car-*

**3.** The Third, Seventh, and Eleventh Circuits disagree with the Second Circuit's holding that this provision of the Bail Reform Act is unconstitutional. *See United States v. Rodriguez,* 803 F.2d 1102 (11th Cir.1986); *United States v. Portes,* 786 F.2d 758 (7th Cir.1986); *United States v. Delker,* 757 F.2d 1390 (3d Cir.1985).

*rion* did not reach the sixth amendment question.

 Furthermore, the defendants in the *Melendez–Carrion* case stood in a different spot than do the present petitioners. The *Melendez–Carrion* defendants were citizens imbued by the fifth amendment with a full liberty interest not yet impeded by a guilty conviction. As excludable aliens, the petitioners in the present case do not "enjoy the fullest degree of legal protection from government attempts to limit their freedom." *Id.* at 1008. Rather, excludable aliens unable to enter the United States are not entitled to any degree of liberty. While the concurrence in *Melendez–Carrion* found that the defendants were being punished by the loss of their liberty without the benefit of a trial, the same cannot be said of the petitioners. The petitioners have never been entitled to liberty in the United States; thus the government's refusal to grant them liberty does not constitute a punishment.

## III. INTERNATIONAL LAW

 The petitioners also allege that their detention is unreasonable within the meaning of international law because international principles prohibit prolonged or arbitrary detention. They allege that their detention is both prolonged and arbitrary.

Both the Fifth and Eleventh Circuits have stated that international law will not bind the government if a legislative or executive action governs the situation. *See United States v. Merkt,* 794 F.2d 950, 964 n. 16 (5th Cir.1986); *Garcia–Mir v. Meese,* 788 F.2d 1446, 1453 (11th Cir.1986). The *Garcia–Mir* court found that the Attorney General's decision to detain rather than parole the aliens was a controlling executive action. The court then cited the *Restatement of the Law of Foreign Relations Law of the United States (Revised)* section 131 and stated that the president, even acting through delegated agents such as the Attorney General, has the power under the Constitution to violate international law in service of domestic needs. *Garcia–Mir,* 788 F.2d at 1455. Because the executive has determined that domestic needs require the continued detention of the petitioners, international law does not apply.

The Eleventh Circuit continued by stating that even if the Attorney General's action did not constitute a controlling executive action, *The Paquete Habana,* 175 U.S. 677, 20 S.Ct. 290, 44 L.Ed. 320 (1900), held that a judicial opinion would also override international law. *Garcia–Mir,* 788 F.2d at 1455. The Eleventh Circuit then cited *Jean v. Nelson,* 727 F.2d 957 (11th Cir.1984), in which the court had held that "even an indefinitely detained alien 'could not challenge his continued detention without a hearing.'" *Garcia–Mir,* 788 F.2d at 1455 (quoting *Jean,* 727 F.2d at 974–75). The holding in *Jean v. Nelson* reflected the refusal of the judiciary to limit the flexibility of the executive or legislative branches. It would undermine this flexibility if international law were invoked to limit the authority provided by Congress to the Attorney General to detain or parole excludable aliens.

Both the Eleventh and Fifth Circuit decisions found international law to be subordinate to actions taken by both the executive and the judiciary. Because domestic laws permit the continued detention of the aliens, the court will not grant relief on any purported violation of international law.

Accordingly,

IT IS ORDERED that the petitioners' petition for habeus corpus be DENIED.