Ebel GAITAN–CAMPANIONI,
et al., Applicants,

v.

Richard THORNBURGH, Attorney
General, Respondent.

No. 9:90 CV 157.

United States District Court,
E.D. Texas,
Lufkin Division.

Nov. 7, 1991.

Stefan H. Krieger, SMU, School of Law, Dallas, Tex., for applicants.

Dane H. Smith, Asst. U.S. Atty., Tyler, Tex., for respondent.

## MEMORANDUM OPINION

JUSTICE, District Judge.

Applicants, Ebel Gaitan–Campanioni, Carlos Alberto Prado Torriente, and Victor Kessel Rodriguez (collectively, "applicants") are Mariel Cubans who arrived on the Freedom Flotilla of Cubans to this country in early 1980. Currently, they are being detained in federal prison, by order of the Attorney General, pending their return to Cuba. Cuba, however, refuses to take them back. Applicants have applied for writs of habeas corpus, challenging

their detention by the Attorney General on the grounds, among others, that the Attorney General lacks statutory authority to detain indefinitely an excludable alien; that the nature of their detention constitutes punishment imposed in violation of Fifth and Sixth Amendment guarantees of trial by jury prior to the imposition of criminal punishment; that their detention violates customary international law; that they have a liberty interest in freedom from detention; and that the Attorney General's procedures for awarding parole do not comport with due process. This court has consolidated the claims of the applicants, and appointed counsel. Applicants have moved, in accordance with Rule 6 of the Rules Governing Section 2254 Cases in the United States District Courts [hereinafter Federal Habeas Rules], for an order allowing discovery. For the reasons stated below, the motion will be granted.

## I. *Authority To Grant Discovery*

■ Rule 6(a) of the Federal Habeas Rules provides:

> a party shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so..... [1]

Although discovery is permitted only by the leave of the court, the court should not hesitate to allow discovery, where it will help illuminate the issues underlying the applicant's claim. Rule 6, Advisory Committee Note ("[d]iscovery may, in appropriate cases, aid in developing facts necessary to decide whether to order an evidentiary hearing or to grant the writ following an evidentiary hearing"). *See also Harris v. Nelson*, 394 U.S. 286, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969); *Developments in the Law—Federal Habeas Corpus*, 83 Harv. L.Rev. 1038, 1179–87 (1970).

## II. *Discovery Sought*

■ In accordance with Rule 6(b), applicants have attached interrogatories and a request for document production that they intend to submit to Respondents. Interrogatories 1–8 seek information regarding: 1) the efforts made by the United States to deport each applicant to Cuba or to a country other than Cuba (Interrogatories 2–3); 2) the reasons for the detention of each applicant (Interrogatory 4); 3) the reasons for the refusal to parole each applicant, including information regarding the applicant's likelihood to commit violence and/or break parole (Interrogatory 5); 4) the applicant's past disciplinary infractions, and psychiatric and psychological reports pertaining to mental health (Interrogatory 6)); 5) the reasons why each applicant was detained in the particular institution in which they were confined (Interrogatory 7); and 6) whether or not the detention is temporary (Interrogatory 8).[2]

In addition, applicants have sought documents regarding 1) the parole determinations and revocations for each applicant (Document Request 1(a)); 2) attempts to deport applicants to Cuba or to other countries (Document Request 1(b)); 3) the decision to detain each applicant (Document Request 1(c)); 4) the manuals, handbooks or guides used in making parole determination and revocation decisions for each applicant (Document Request 2); and 5) documents relating to bilateral talks and discussions with Cuba regarding the Migration Agreement with Cuba (Document Requests 3–4).

## III. *Good Cause To Award Discovery*

All of the above information appears to be relevant to applicants' claims, and it is found that there is good cause to order discovery of this material. The essence of applicants' complaint is that both the Immigration and Nationalization Act (INA) 8 U.S.C. § 1101 *et seq.,* and the constitutional

---

**1.** The Federal Habeas Corpus Rules govern cases brought under 28 U.S.C. § 2254. Although these consolidated actions are brought under 28 U.S.C. § 2241, Rule 1(b) of the Federal Habeas Rules permits the court to apply the rules in habeas cases not brought under § 2254.

**2.** Interrogatory one asks Respondent to identify the persons who participate in the preparation of answers to the interrogatories. Clearly, such information is relevant.

prohibition on imposing punishment without indictment and trial, prevent the Attorney General from detaining an excludable alien for longer than a reasonable period of time in which to effect the exclusion of the alien. *See Amanullah v. Nelson*, 811 F.2d 1, 9 (1st Cir.1987); *Rodriguez–Fernandez v. Wilkinson*, 654 F.2d 1382, 1387 (10th Cir.1981). Applicants, therefore, will seek to demonstrate that their continued detention, over ten years since their arrival, is unreasonable under the circumstances of this case. Apparently, they will endeavor to show that the government has not made reasonable efforts to deport them, *see Amanullah*, 811 F.2d at 9, or alternatively, that the government has no reasonable prospects of deporting them, and, therefore, that the detention is indefinite, rather than temporary. *See Rodriguez–Fernandez*, 654 F.2d at 1386. Information gathered from Interrogatories 2, 3 and 8, and Document Requests 1(b), 3, and 4 would be relevant to such a showing.

Applicants also argue that the conditions and length of their detention constitute punishment, which cannot be imposed without a trial and a grand jury indictment. *See Bell v. Wolfish*, 441 U.S. 520, 535, 99 S.Ct. 1861, 1872, 60 L.Ed.2d 447 (1979) ("under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law"); *Rodriguez–Fernandez*, 654 F.2d 1382 (10th Cir.1981). In *United States v. Salerno*, 481 U.S. 739, 746, 107 S.Ct. 2095, 2101, 95 L.Ed.2d 697 (1987), the Court held that detention without trial was generally permissible only if it was imposed for some regulatory reason other than punishment. *See also Schall v. Martin*, 467 U.S. 253, 264–74, 104 S.Ct. 2403, 2409–415, 81 L.Ed.2d 207 (1984); *Bell*, 441 U.S. at 535, 99 S.Ct. at 1872. In determining whether detention was permissible regulation or impermissible punishment, the *Salerno* Court held that the following factors were rele-

vant: the purpose of the detention; whether the conditions of detention are reasonable in relation to the nonpunitive purpose; the nature of the procedures under which detention may be imposed; and whether the detainees are housed in facilities separate from persons imprisoned after conviction of a crime. *Salerno*, 481 U.S. at 747–48, 107 S.Ct. at 2101–02. In this case, applicants are seeking to show that their detention is punishment. Clearly, information from Interrogatories 2–7, and Document Requests 1–4 would bear on the factors mentioned in *Salerno*, and would therefore be relevant to demonstrating punishment.

Respondent opposes discovery primarily on two grounds. First, respondent argues that there is absolutely no merit to the applicants' argument that their detention is punishment imposed without indictment or trial. However, a survey of the applicable case law clearly refutes the respondent's position. In *Rodriguez–Fernandez*, 654 F.2d 1382 (10th Cir.1981), the Tenth Circuit held that indefinite detention of excludable Mariel Cubans constituted punishment that could not be imposed without due process protections. Other courts have rejected constitutional challenges to the detention of excludable aliens. *Alvarez–Mendez v. Stock*, 941 F.2d 956, 962 (9th Cir.1991); *Jean v. Nelson*, 727 F.2d 957, 967–75 (11th Cir.1984) (en banc), *aff'd on other grounds*, 472 U.S. 846, 105 S.Ct. 2992, 86 L.Ed.2d 664 (1985); *Fernandez–Roque v. Smith*, 734 F.2d 576 (11th Cir.1984); *Palma v. Verdeyen*, 676 F.2d 100, 104 (4th Cir.1982). There is, therefore, a split in the judicial circuits regarding whether or not the detention of excludable aliens constitutes punishment. Indeed, in *Jean*, the Court construed the regulations promulgated under the INA, so as to avoid the question of whether the refusal to parole the detainees violated their rights to due process.[3] 472 U.S. 846, 854, 105 S.Ct. 2992, 2996.

---

3. In *Jean*, the detainees were Haitian aliens who claimed that the Immigration and Naturalization Service (INS) had discriminated against them on the grounds of their race and national origin in detaining them and refusing to grant them parole. The court of appeals had held that

as excludable aliens, the applicants had no due process rights to be free from detention. 727 F.2d 957, 967–975 (11th Cir.1984). The Court, however, held that it was unnecessary to consider this issue, because INS regulations precluded INS officials from considering race and nation-

The Supreme Court's decision in *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 215, 73 S.Ct. 625, 630, 97 L.Ed. 956 (1953) is also not dispositive of the issue presented in this case. In *Mezei*, the Court upheld the detention of an excludable alien at Ellis Island for twenty-one months pending efforts to find another country that would agree to take him. Several factors in *Mezei* distinguish that case from this one, however. First, the decision to exclude the alien was specifically based on a finding by the Attorney General that the alien's presence in the United States would be a threat to national security. Second, the alien was held in a detention facility on Ellis Island, rather than a federal prison. Third, there was evidence in the record of ongoing efforts to deport the alien to other countries. The court in *Rodriguez–Fernandez* found that because of these differences, *Mezei* was not dispositive of the issue of whether indefinite detention of the Mariel Cubans in a federal prison was constitutional. 654 F.2d at 1382.

In sum, one circuit has held that indefinite detention of excludable aliens violates their fifth amendment rights to due process prior to the imposition of punishment. The Supreme Court has not passed on the issue. Furthermore, the Supreme Court indicated recently in *Salerno* that the legality of detention depended on a highly factbound determination of the purposes and nature of the detention. The applicants' contention that their detention is unconstitutional, therefore, has sufficient support to warrant discovery to bolster their claims.

The applicants' contention that the attorney general lacks statutory authority to detain them indefinitely also has considerable support. The INA specifically authorizes temporary detention of an alien seeking entry, for further inquiry, if the alien is not "clearly and beyond a doubt" entitled to enter. 8 U.S.C. § 1225(b). This detention, however, is only temporary, pending

the holding of an exclusionary hearing to determine whether the alien shall be allowed to enter, or shall be excluded and deported. 8 U.S.C. § 1226(a). If the alien is excluded, the alien "shall be immediately deported ... unless the Attorney General ... concludes that immediate deportation is not practicable". 8 U.S.C. § 1227(a)(1). In the event that the alien's country of origin refuses to accept the alien, the Attorney General must direct the alien's deportation to another country that is willing to accept the alien. 8 U.S.C. § 1227(a)(2). The statute is therefore silent regarding the authority of the Attorney General to detain excludable aliens *after* they have been excluded and the country of origin has refused to accept them. *Palma*, 676 F.2d at 104 ("[i]t is apparent ... that none of these statutes expressly authorizes the Attorney General to detain an alien indefinitely after an unsuccessful attempt to detain him"). Any such authority must be implied.

In interpreting the statute, the courts have diverged on whether the Attorney General has authority to detain excludable aliens indefinitely. At least two courts have held, on the facts before them, that the attorney general lacked authority to continue to detain excludable Mariel Cubans. *Rodriguez–Fernandez v. Wilkinson*, 654 F.2d at 1389; *Gallego v. Immigration and Naturalization Service*, 663 F.Supp. 517 (W.D.Wis.1987). Other courts, while upholding the detention at issue, have held that the INA permits only temporary detention pending deportation, not indefinite detention. *Amanullah v. Nelson*, 811 F.2d 1, 9 (1st Cir.1987); *Fragedela v. Thornburgh*, 761 F.Supp. 1252, 1256 (W.D.La.1991). Still other courts have indicated that the Attorney General has implied authority to detain excludable aliens indefinitely. *Palma*, 676 F.2d at 104; *Fernandez–Roque*, 734 F.2d at 580 n. 6. In this case, applicants seek information regarding efforts to deport them to Cuba or to other countries, and the status of negotiations with Cuba to effectuate the return of Mariel Cubans to that country. Such

---

al origin in making parole decisions. It was therefore necessary to remand the case to the district court, for determination of whether the

INS officials had complied with the regulations. 472 U.S. 846, 105 S.Ct. 2992.

information would be relevant in determining whether the applicants' detention was temporary or permanent. *Fragedela*, 761 F.Supp. at 1256–57.

A recent amendment to the statute, effective November, 1990, appears to provide more specific authority to the Attorney General to detain aliens who are convicted of a felony if the country of which they are citizens, subjects, nationals or residents refuses to accept them.[4] 8 U.S.C. § 1226(e). *See Alvarez–Mendez v. Stock,* 941 F.2d 956, 962 (9th Cir.1991). However, it is not clear if, or to what extent, the statute would apply retroactively to the applicants, who filed their petitions, and committed crimes in this country, prior to the amendment.[5] *See Alvarez–Mendez,* 941 F.2d at 960. In addition, the argument has been made that this amendment authorizes detention only pending a determination of excludability. 941 F.2d at 960. Although the *Alvarez–Mendez* court rejected this argument, this question, as well as the retroactivity issue, make it unclear whether the 1990 amendment would authorize continued detention in this case.

Therefore, respondent's argument that applicants have no legal support for the legal theories upon which they base their discovery request is itself without merit. In truth, the law is unsettled, and there is ample support for the applicants' claims.

Furthermore, discovery from respondent is the most appropriate way to obtain the information that will test the validity of the applicants' claims. As the *Rodriguez–Fernandez* court observed:

> [w]hen an excludable alien in custody tests the detention by writ of habeas corpus ... the burden is upon the government to show that the detention is still temporary pending expulsion, and not simply incarceration as an alternative to departure. *Information on this issue is more readily available to the government.*

654 F.2d at 1390 (emphasis added). Discovery is, therefore, appropriate for these claims.

Respondent's second argument in opposition to discovery is that, in its answer and return, it has already provided information regarding why each applicant was not paroled. The applicants respond that the information provided is insufficient. In the absence of a contrary indication, it must be assumed that the applicants have made their discovery request in good faith and are not already in possession of all of the information sought. *See* Fed.R.Civ.P. 11. Furthermore, to curtail discovery would risk denying the applicants relevant information that the government has not, for whatever reason, heretofore provided. Therefore, applicant's discovery will not be restricted based solely on respondent's as-

---

**4.** 8 U.S.C. § 1226(e) provides: "(1) Pending a determination of excludability, the Attorney General shall take into custody any alien convicted of an aggravated felony upon completion of the alien's sentence for such conviction. (2) Notwithstanding any other provision of this section, the Attorney General shall not release such felon from custody unless the Attorney General determines that the alien may not be deported because the condition described in section 243(g) [8 USCS § 1253(g)] exists. (3) If the determination described in paragraph (2) has been made, the Attorney General may release such alien only after—

(A) a procedure for review of each request for relief under this subsection has been established,

(b) such procedure includes consideration of the severity of the felony committed by the alien, and

(c) the review concludes that the alien will not pose a danger to the safety of other persons or to property."

8 U.S.C. § 1253(g) provides: "Upon the notification by the Attorney General that any country upon request denies or unduly delays acceptance of the return of any alien who is a national, citizen, subject, or resident thereof, the Secretary of State shall instruct consular officers performing their duties in the territory of such country to discontinue the issuance of immigrant visas to nationals, citizens, subjects, or residents of such country, until such time as the Attorney General shall inform the Secretary of State that such country has accepted such alien."

**5.** *Interestingly, Respondent's brief filed in support of its answer and return, filed in March, 1991, argues only that 8 U.S.C. § 1226(b) authorizes the Attorney General to detain excluded aliens indefinitely. Respondent does not argue that the 1990 amendment also provides such authority in this case.*

sertions that it has already provided all of the relevant information requested. Respondent's answer and return have been examined, and it is noted that the affidavits and exhibits contained therein are not voluminous. Should some of the information sought be duplicative of information already provided in the answer and return, it will not be unduly burdensome simply to reproduce the applicable affidavits and exhibits from respondent's attachments to its answer.

## IV. *Other Discovery Requests*

■ Two additional discovery requests must be considered. In their answer and return, respondents have attached the declaration of John A. Simon, the INS Deputy Assistant Commissioner for Detention and Deportation, which contains information regarding the detention of Mariel Cubans and sets forth reasons why the present detention policy is prudent and desirable. Document Request Number five seeks all documents used by Mr. Simon in preparation of his declaration. As previously discussed, adjudication of the applicant's Fifth Amendment claim requires an evaluation of whether there is a nonpunitive regulatory purpose to the detention, and whether the nature of the detention " 'appears excessive in relation to the alternative purpose' ". *Salerno,* 481 U.S. at 747, 107 S.Ct. at 2101 (quoting, *Schall v. Martin,* 467 U.S. 253, 269, 104 S.Ct. 2403, 2412, 81 L.Ed.2d 207 (1984). Apparently, the government intends to use the Simon declaration to bolster its contention that the detention of the Mariel Cubans is an appropriate means of effecting a nonpunitive purpose. It is, therefore, fitting that the applicants have access to the documents relied on by John Simon in preparing his affidavit, whereby they may be able effectively to rebut the government's contention, and be in a position to cross-examine Simon, if he should testify. Document Request number five therefore will be approved.

■ The Simon Declaration also states that 2,618 Mariel Cubans are being detained as of July 6, 1990. Applicants Inter-

rogatory number asks the government to identify how many of these individuals are currently being detained, how many have been paroled, the reasons that the individuals are being detained, and the number of persons detained for each reason. Respondent argues that providing this information would be unduly burdensome. However, respondent itself has made discovery of this information necessary by introducing the Simon Declaration to support detention of the applicants. The interrogatory seeks to update Simon's statement that 2,618 Mariel Cubans were being detained as of a year ago. In addition, Simon makes general observations about the Mariel cubans who are detained and the reasons why they are detained or paroled. Simon Declaration 14–16. The information sought in Interrogatory nine will enable the applicants to test the validity of Simon's general observations. The applicants' motion for discovery therefore shall be granted in a separate order issued concurrently herewith.